THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE C. ROBY, Defendant-Appellant.

Fifth District   No. 5—86—0031

Opinion filed May 3, 1988.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Gregory Grigsby, State's Attorney, of Taylorville (Kenneth R. Boyle, Stephen E. Norris, and Kathy J. Greer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in the circuit court of Christian County, defendant-appellant, Willie C. Roby, was convicted on January 2, 1986, of three counts of offense relating to motor vehicles and was sentenced to concurrent terms of four years' imprisonment, fined $500 and ordered to pay $700 restitution. Defendant raises three issues on appeal: (1) that the State's failure to disclose the fact that one of the State's witnesses was a paid informant for the Illinois Secretary of State denied him the right to a fair trial; (2) that the trial court erred in imposing upon him a $500 fine while at the same time ordering him to pay $700 restitution without a finding that defendant had the ability to pay the $500 fine and without specifying the time limit or method of making the $700 restitution; and (3) that the defendant is entitled to a $5-per-day credit against his fine for each of the 21 days he spent in the county jail prior to posting bond.

The sequence of events leading to defendant's arrest and conviction consisted of the theft of one automobile, the purchase of a similar automobile of lesser value, and the substitution of the vehicle identification number (VIN) from the automobile of lesser value to the vehicle of greater value. After substituting the VIN from the automobile purchased for $200 to the stolen vehicle, the stolen vehicle was sold for $700. Testimony adduced at trial included the following.

Marty Smith, the owner of Marty's Auto Salvage, testified that on December 31, 1984, he sold a silver 1977 Camaro to the defendant for $200. Although Claudious Brooks signed the title to this vehicle, the $200 was paid to Mr. Smith by the defendant.

John Falkenhein, owner of the red 1976 Camaro, testified that the vehicle had been stolen on December 27, 1984. He testified that he was able to identify the vehicle because he had repaired a rusted area on the hood of the automobile, had replaced a passenger door, had replaced a section of the metal on a rear quarter panel, and had installed a custom spoiler.

James Krouse, a convicted felon acquainted with the defendant, testified that on December 27, 1984, he saw the defendant and a red Camaro at Claudious Brooks' garage. On that date the defendant asked him if he knew of a place where defendant could get a title and a VIN. During the first week of January 1984, he again saw the defendant and the red Camaro at Claudious Brooks' garage and observed an unknown black man remove the dashboard from the red Camaro and replace it with a different one.

John King, a trooper with the Illinois State Police, testified that the VIN mounted on the dashboard of the red, 1976 Camaro did not

appear to be factory installed. He based his conclusion on the facts that one corner of the VIN was bent, and the VIN plate was loose to the touch, with one rivet missing and one rivet improperly attached. Trooper King also testified that the VIN in the dashboard of the red 1976 Camaro was actually the VIN from the silver 1977 Camaro purchased from the salvage by the defendant.

Connie Emerson testified that Claudious Brooks and the defendant came to her home, aware that Mrs. Emerson's daughter was interested in purchasing a Camaro, and offered to sell her the red 1976 Camaro. She stated that Mr. Brooks told her the vehicle actually belonged to the defendant, but his (Claudious Brooks) name appeared on the title because the defendant was going through a divorce. After some negotiation, the defendant accepted $700 as the selling price for the vehicle. Tim Emerson, Connie Emerson's husband, testified that the bank from which he borrowed the money to pay for the car drafted a check in the name of Claudious Brooks and that Mr. Brooks cashed the check and gave an unknown amount of money to the defendant.

At the close of the evidence, the jury deliberated and returned a guilty verdict on all counts. Prior to the hearing on post-trial motions and sentencing, defendant's attorney discovered that Mr. Smith, the owner of the auto salvage who testified for the State, was a paid informant for the Illinois Secretary of State. It was stipulated that neither the prosecution nor the defense was aware, prior to or during the trial, that Mr. Smith had been paid to provide information to the Secretary of State in cases not related to the case at bar. The trial court denied defendant's motion for a new trial and sentenced defendant to concurrent terms of four years' imprisonment and two years of mandatory supervised release. Additionally, defendant was fined $500 plus costs and was ordered to make restitution in the amount of $700.

Defendant's first contention on appeal is that the State denied his right to a fair trial by failing to disclose all material or information in its possession or control tending to negate the guilt of the accused as to the offense charged. (107 Ill. 2d R. 412(c).) While the State counters that it cannot be expected to disclose evidence of which it has neither knowledge nor possession (see *People v. Spurlark* (1979), 74 Ill. App. 3d 43, 57, 392 N.E.2d 214, 224), defendant asserts that had the State used diligent good-faith efforts to discover and disclose that Mr. Smith had acted as a paid informant for the Illinois Secretary of State (107 Ill. 2d Rules 412(f), (g)), this information could have been used by the defense to impeach Mr. Smith's testimony. Such an impeachment, argues the defendant, could have raised a rea-

sonable doubt as to defendant's guilt and resulted in his acquittal. We disagree.

*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, established that the State's failure to disclose, upon request, evidence favorable to the defendant is a violation of defendant's due process rights where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the State. Illinois courts have construed *Brady* as imposing a due process requirement that the State disclose impeachment evidence which tends to discredit the credibility of a State's witness. (*In re Hatfield* (1979), 72 Ill. App. 3d 249, 260, 390 N.E.2d 453, 462; *People v. Winchel* (1987), 159 Ill. App. 3d 892, 906, 512 N.E.2d 1298, 1306.) The omission of this potentially impeaching evidence must be evaluated in the context of the entire record, and if there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial. *People v. Bouska* (1983), 118 Ill. App. 3d 595, 600, 455 N.E.2d 257, 261.

■ According to the record in the present case, the State and defense stipulated that neither party was aware, prior to or during the trial, that Mr. Smith had acted as a paid informant for the Secretary of State. Further, the committee comments following the disclosure statute provide that paragraph (g) of the statute "avoids placing the burden on the prosecutor, in the first instance, of canvassing all governmental agencies which might conceivably possess information relevant to the defendant." (107 Ill. 2d R. 412(g), Committee Comments, at 497.) Moreover, assuming *arguendo* that the prosecution was obligated to canvass all governmental agencies and disclose all information relevant to the defendant, the prosecution's failure to disclose the potentially impeaching evidence in the instant case was harmless error, as the potentially impeaching evidence is not material evidence under the standard enunciated in *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375.

■ In *Bagley*, the Supreme Court held that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375.) Reviewing the record in the case at bar, we do not consider the potentially impeaching evidence to be of such magnitude as to create a reasonable probability that the jury's verdict would have been different had the evidence been disclosed. Marty Smith, the State's witness who had acted as a

paid informant for the Secretary of State, was not a paid informant in the instant case. The introduction of Mr. Smith's past involvement as a paid informant for the Secretary of State would not preclude the admissibility of his testimony and would only affect the credibility of and weight given to his testimony. Considering the potentially impeaching evidence in the context of the entire record, we find no reasonable doubt about the defendant's guilt, and therefore, the judgment will not be disturbed.

Next, appellant contends that the trial court erred when it imposed a $500 fine upon the defendant after also ordering defendant to make restitution for the stolen vehicle in the amount of $700. This contention alleges errors on behalf of the trial court in violation of three statutory provisions: that the trial court erred, in determining the amount of defendant's fine, when it failed to consider defendant's ability to pay a fine and whether the fine might prevent defendant's payment of restitution (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—9—1(d)(1), (d)(2)); and that the trial court erred, in determining the restitution to be paid by defendant, when it failed to fix time limits and manner of payment (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(f)).

Beginning with appellant's contention that the trial court erred in imposing a fine as part of his sentence, it has been held that in determining the amount and method of payment of a fine, a trial judge must consider defendant's financial resources and future ability to pay and whether a fine would prevent the defendant from making any court-ordered restitution. (*People v. Bishop* (1980), 81 Ill. App. 3d 521, 401 N.E.2d 648.) A specific finding of ability to pay is not necessary, as such finding is implicit in the imposition of the fine where the trial court is aware of facts that support its determination. (*People v. Ivy* (1985), 133 Ill. App. 3d 647, 656, 479 N.E.2d 399, 405.) The record in the present case indicates that the defendant was part owner of an auto body shop and garage, that the defendant lived with his girlfriend, her children and his son in a trailer owned by his girlfriend, that defendant had posted a total of $2,000 bond, and that defendant's only liability was rent payment of $10 per day for shop space. Further, bail money may be used to satisfy fines and costs levied against a defendant whether or not the cash received as bail is actually the property of the defendant. (*People v. Foreman* (1987), 153 Ill. App. 3d 346, 505 N.E.2d 731.) In light of these factors, coupled with the ruling that a trial court's decision to impose a fine as part of the defendant's sentence is entitled to great deference and weight (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), we cannot say that the court abused its discretion in imposing a fine as part of

defendant's sentence.

■■ ■ Considering next appellant's contention that the trial court erred in failing to specify a time limit for restitution and whether restitution was to be paid in a single payment or in installments, we must again allow the trial court great deference in determining an appropriate sentence under *Perruquet* and infer from the fact that the trial court did not specify whether restitution was to be paid in a single payment or in installments that the court intended it to be paid in a single payment upon entry of final judgment. Such inference is supported by the fact that defendant had posted $2,000 bond, and the fact that the trial court knew that defendant was to begin serving four years' imprisonment, during which time his ability to earn money would diminish and a payment schedule would be inappropriate. By statute, a court may require a defendant to apply the balance of a cash bond, after fines and costs, to the payment of restitution. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(e).) In assessing defendant's ability to pay restitution and in determining the manner and time of payment, it is proper to consider defendant's term of imprisonment. *People v. White* (1985), 135 Ill. App. 3d 563, 482 N.E.2d 134.

■■ ■ Defendant's final contention on appeal, that he should have received $5 credit against the fine imposed for each day spent in custody while awaiting trial, was recently addressed by our supreme court in *People v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879. In *Hare*, the court ruled that a defendant who is in custody awaiting trial, and whose post-trial sentence includes both a term of imprisonment and a fine, may receive credit for the time served pretrial against both the term of imprisonment and the fine. The statutory provision for the $5-per-day credit requires that the clerk of the court notify the defendant of the provision and that the defendant shall be allowed credit upon application. (Ill. Rev. Stat. 1985, ch. 38, par. 110—14.) In the instant case, the record indicates that the defendant was not notified of the provision and made no application for the $5-per-day credit prior to this appeal. This situation was confronted by this court in *People v. Bratcher* (1986), 149 Ill. App. 3d 425, 500 N.E.2d 954, where we held that a defendant's failure to make timely application for the $5-per-day credit does not preclude such an application on appeal where the record does not indicate that the clerk of the court notified defendant in writing of his statutory entitlement to such credit. Therefore, because the defendant in the present case served 21 days prior to trial, he should have been given $105 credit toward the $500 fine imposed upon him, and the judgment of the trial court is hereby affirmed and the cause is remanded to credit defend-

ant $105 toward his $500 fine.

For the foregoing reasons, the judgment of the circuit court of Christian County is affirmed and this cause is remanded to that court with directions to credit defendant $105 toward his $500 fine.

Affirmed and remanded with directions.

LEWIS and CALVO, JJ., concur.