(No. 80374.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT LOUIS WOODARD, Appellee.

*Opinion filed February 20, 1997.—Rehearing denied March 31, 1997.*

MILLER, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and Patrick Duffy, State's Attorney, of Mound City (Barbara A. Preiner, Solicitor General, Arleen C. Anderson and Darryl B. Simko, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Robert J. Biderman and Charles F. Mansfield, of the Office of the

State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Lawrence J. O'Neill, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The single issue presented by this appeal is whether a defendant may be allowed on appeal the *per diem* monetary credit, for incarceration prior to sentencing, provided under section 110—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 1994)). We hold that the credit may be allowed on appeal.

## BACKGROUND

On October 24, 1993, defendant, Robert Louis Woodard, led police on a high-speed chase along an interstate highway in his pickup truck following a failure to pay for gasoline at a service station. After police took defendant into custody, they discovered cocaine in his shirt pocket. Defendant also spat on a police officer.

On January 26, 1994, defendant was convicted by a Pulaski County jury of aggravated battery and unlawful possession of a controlled substance. 720 ILCS 5/12—4(b)(6), 570/402 (West 1992). On March 17, 1994, defendant was sentenced to concurrent prison terms of three years for aggravated battery and one year for the drug offense. Defendant was also ordered to pay fees and costs and was assessed a $500 fine. A credit was applied by the trial court reducing defendant's period of imprisonment by 114 days, the number of days he served in custody prior to sentencing. Defendant did not request, and the court did not order, that a *per diem* credit for time in custody prior to sentencing, pursuant to section 110—14, be applied against his $500 fine. 725 ILCS 5/110—14 (West 1994).

On appeal, defendant claimed, *inter alia,* that he was entitled to the *per diem* credit allowed under section 110—14. The State maintained that defendant had waived the credit by failing to apply for it. The appellate court noted that, despite the elimination of the clerk notification requirement from section 110—14 by amendment in 1994, nothing within the record indicated that defendant had been notified of the credit at the trial level. 276 Ill. App. 3d 242. The court declined to follow *People v. Toolate,* 274 Ill. App. 3d 408 (1995), which held that the issue of a section 110—14 credit was waived on appeal based on a defendant's failure to raise the issue in the trial court at sentencing or in a post-trial motion. See also *People v. Hillsman,* 281 Ill. App. 3d 895, 896 (1996). Reasoning that it was "inherently unfair" to make defendant keep records of the time he was incarcerated, the court also expressed hesitancy to hold that a statutory right had been waived, absent an affirmative showing of waiver on the record. The court affirmed defendant's conviction and sentence, and modified the judgment, pursuant to section 110—14, to reflect a $500 credit against the $500 fine for the period of defendant's incarceration prior to sentencing. 276 Ill. App. 3d at 248.

We granted leave to appeal (155 Ill. 2d R. 315). Appellant subsequently elected to supplement its petition with its appellate brief pursuant to Supreme Court Rule 315(g) (155 Ill. 2d R. 315(g)). We now affirm.

## SECTION 110—14

Section 110—14 of the Code of Criminal Procedure of 1963 originally provided:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense *shall be allowed a credit* of $5 for each day so incarcerated prior to conviction except that in no case shall the amount so allowed or credited

exceed the amount of the fine." (Emphasis added.) Ill. Rev. Stat. 1965, ch. 38, par. 110—14.

Effective October 1, 1977, the legislature amended the provision to add (1) the phrase "upon application of defendant," and (2) the requirement that the circuit court clerk give written notice of the credit to an eligible defendant at the time of his conviction. Section 110—14 thus provided:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense *shall be allowed a credit* of $5 for each day so incarcerated *upon application of the defendant. The clerk of the court shall notify the defendant in writing of this provision of the Act at the time he is convicted.* However, in no case shall the amount so allowed or credited exceed the amount of the fine." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 110—14.

Effective January 1, 1994, the legislature again amended section 110—14 by eliminating the language concerning clerk notification, but retaining the language concerning application of the defendant. Section 110—14 thus provided:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense *shall be allowed a credit* of $5 for each day so incarcerated *upon application of the defendant.* However, in no case shall the amount so allowed or credited exceed the amount of the fine." (Emphasis added.) 725 ILCS 5/110—14 (West 1994).

Defendant does not dispute that the 1994 amended version of section 110—14 governs consideration of any credit in this case. When a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change of law and without regard to whether or not the action has been instituted, unless there is a saving clause as to existing litigation. *Maiter v. Chicago Board of Education*, 82 Ill. 2d 373, 390 (1980).

It is clear from the statute that any change in law resulting from the 1994 amendment, which eliminated the clerk notification requirement, could only have affected remedy or procedure and not the substantive law. See *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310 (1988) (procedure embraces pleading, evidence and practice, which are legal rules directing course of proceedings to bring parties into court and course of court afterwards). Further, the 1994 amendment became effective without a savings clause. Accordingly, we find that although the instant criminal acts occurred on October 26, 1993, the 1994 amended version of section 110—14 in effect on January 26, 1994, the date of defendant's conviction, governs consideration of any credit in this case.

## ANALYSIS

The State claims that the appellate court erred in this case, by awarding the *per diem* credit, because section 110—14 no longer includes the clerk notification requirement which previously provided the foundation for reviewing courts to excuse on appeal a defendant's failure to apply for the credit at the trial level. The State claims that the court has elsewhere correctly recognized the intended effect of the 1994 amendment which eliminated the clerk notification requirement. See *Toolate*, 274 Ill. App. 3d 408.

The State takes the position that, under section 110—14, since amendment in 1977, a defendant must apply for the *per diem* credit at the trial level as a precondition to the statutory right to the credit or else forfeit the right. Section 110—14 thus confers only a limited statutory right to the credit that cannot be recognized as a matter of course on appeal. The State contends that the statutory evolution of section 110—14, legislative debates, and the provision's inclusion among bail provisions show that the opportunity for obtaining

the credit has always been limited to the trial level. During the period between the 1977 and 1994 amendments, when the provision included the clerk notification language, there existed a foundation for reviewing courts to excuse a defendant's failure to timely apply at the trial level. *People v. Winkler*, 77 Ill. App. 3d 35 (1979) (allowing credit on appeal, though defendant failed to apply for credit upon conviction in the trial court, where no indication of clerk notification as required by statute). According to the State, with the elimination of the clerk notification requirement by amendment in 1994, any basis for excusing a defendant's failure to apply for the credit at the trial level ceased to exist. The 1994 amendment, as shown by legislative debates, did not affect that part of section 110—14 requiring that a defendant apply at the trial level as a precondition to receiving the credit.

Defendant maintains that despite the 1994 amendment eliminating the clerk notification requirement, the appellate panel here correctly found that the defendant's failure to apply for the credit in the trial court did not result in a waiver of the statutory right to the credit on appeal. Defendant points out that other appellate decisions have also taken this position. See *People v. Scott*, 277 Ill. App. 3d 565, 566-67 (1996); *People v. Nixon*, 278 Ill. App. 3d 453, 460 (1996).

According to defendant, under any amended version of section 110—4, a defendant is not limited to applying for the *per diem* credit only at the trial level. Defendant maintains that the plain language and meaning of section 110—14 reveals no legislative intent to limit a defendant's opportunity for seeking the credit to the trial level, nor any legislative intent that the failure to apply for the credit in the trial court results in forfeiture of the credit. Defendant argues that the State's interpretation of section 110—14 and the effect of the 1993

amendment is contrary to legislative practice and inconsistent with statutory construction principles. Defendant points out that the appellate court has consistently declined to find waiver of the credit and if the legislature had intended to discontinue this practice by amending the provision in 1993, it would have included such a waiver. Instead, as shown by legislative debates, the 1993 amendment did not affect section 110—14 in any way other than to relieve the circuit clerk of the duty to notify defendants of the provision.

The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. *People v. Hare*, 119 Ill. 2d 441, 447 (1988). There is no rule of construction which allows the court to declare that the legislature did not mean what the plain language of the statute imports. Where an enactment is clear and unambiguous, the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express (see *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76 (1994); see also *In re Estate of Swiecicki*, 106 Ill. 2d 111, 120 (1985), quoting *Belfield v. Coop*, 8 Ill. 2d 293, 307 (1956)), nor is it necessary for the court to search for any subtle or not readily apparent intention of the legislature (*DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377 (1993); *cf. People v. Welty*, 275 Ill. App. 3d 10 (1995) (in absence of more explicit statutory prohibition denying day-for-day credit against periodic imprisonment for time served as result of given offense, court loathe to create exception to credit provision by implication)). Where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction. *People v. Sheehan*, 168 Ill.

2d 298 (1995). Criminal or penal statutes are to be strictly construed in favor of an accused and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *People v. Shinkle*, 128 Ill. 2d 480 (1989).

An amendment is to be construed together with the original act to which it relates. *Illinois Chiropractic Society v. Giello*, 18 Ill. 2d 306 (1960). Every amendment to a statute is presumed to have a purpose, and a court must consider the language of an amended statute in light of the need for amendment and the purpose it serves. *People v. Richardson*, 104 Ill. 2d 8 (1984); see also *In re Marriage of Freeman*, 106 Ill. 2d 290 (1985). A judicial interpretation of a statute is considered part of the statute itself until the legislature amends it contrary to that interpretation. See *Miller v. Lockett*, 98 Ill. 2d 478 (1983).

The express language of section 110—14, as amended in 1994, provides that an eligible defendant "shall be allowed" a *per diem* credit "upon application" for it. Section 110—14 is silent concerning any time frame or procedural stage during which such application either must or can be made. Furthermore, at no time prior to the 1994 amendment did section 110—14 include such a limitation. Subsequent to the 1977 amendment, and until the 1994 amendment, the provision provided that the circuit clerk was to notify an eligible defendant of the credit "at the time he is convicted." 725 ILCS 5/110—14 (West 1992). Within section 110—14 during this period, the phrase "at the time he is convicted" clearly qualified the clerk notification requirement and not the defendant application language. The phrase did not even appear within the same sentence as the language pertaining to a defendant's application. Furthermore, there is no indication from the language of that version of the statute that the clerk notification

requirement was added by the legislature because defendants were required, concomitantly, to apply for the credit at the trial level.

In addition, section 110—14 has carried no indication on its face, throughout its evolution, that a defendant must apply at the trial level for the credit, as a precondition to receiving any benefit of the credit, or risk forfeiture of the credit. At all relevant times, both before and subsequent to the 1977 and 1994 amendments, section 110—14 has expressly provided that an eligible defendant "shall be allowed" the credit.

Generally, the use of the word "shall" in a statute is regarded as indicating a mandatory rather than a directory intent. The rule is not, however, an inflexible one; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters. See *People v. Davis*, 93 Ill. 2d 155, 162 (1982); *People v. Youngbey*, 82 Ill. 2d 556, 562 (1980).

It is significant that the legislature, when enacting article 110 of the Code of Criminal Procedure in 1963, was concerned with inequities posed by the administration of bail in criminal cases. See *People ex rel. Carroll v. Frye*, 35 Ill. 2d 604, 606 (1966); Ill. Ann. Stat., ch. 38, art. 110, Committee Comments—1963, at 273-74 (Smith-Hurd 1980) (referring to discriminatory effect of requiring bail of indigents who cannot even pay bond premiums). The legislature sought to minimize, if possible, those inequities in its enactment of article 110. Consequently, in light of these concerns, section 110—14, like other sentencing provisions which employ the word "shall" to confer a statutory right to credit (see 730 ILCS 5/5—8—7(b), (c) (West 1992)), would appear to contemplate a mandatory monetary credit for incarceration prior to sentencing on a bailable offense.

The 1977 amendment added the phrase "upon application of the defendant" to the sentence stating that

the credit "shall be allowed." The addition of this phrase made clear that a defendant was to be allowed the credit upon his request for it. *Cf. People v. Emery*, 190 Ill. App. 3d 171, 173 (1989) (clear purpose of 1977 amendment was to put defendant on notice of credit so he might request it).

Even assuming that a defendant's *application* was intended as a precondition to the statutory right to the credit, section 110—14 remained silent during this period concerning any time frame or procedural stage for such application to occur. Moreover, the language pertaining to timely clerk notification was subsequently eliminated by the 1994 amendment, but no change was made to the language concerning defendant application. In sum, section 110—14's language does not indicate forfeiture of the statutory right to the credit for failure to apply at the trial level.

The State, however, reasons that if the absence of an express statement that a defendant is limited to a trial level application means that a defendant is not so limited, and may receive the credit on appeal, then conversely, the absence of an express statement that the credit can be awarded on appeal means that it cannot be. We reject this reasoning.

A court is not at liberty to read limitations and exceptions into an unambiguous statute, regardless of how such restrictions are characterized. Moreover, unlike the absence of an express limitation of application for the credit to the trial level, the absence of an express allowance of the credit on appeal does not necessarily operate as a negation of that procedural avenue, without more. Furthermore, it would have been unnecessary here for the legislature to expressly allow the credit on appeal when application for the credit was not expressly limited to the trial level.

The State also asserts that both this court and the

appellate court have acknowledged the time frame during which the credit benefit is meant to operate. Thus, the court stated in *People v. Hare*, 119 Ill. 2d 441, 444 (1988), that "[s]ection 110—14 of the Code of Criminal Procedure of 1963 [citation] provides a $5 credit, to be applied against a subsequently imposed fine." The appellate court stated in *People v. Smith*, 258 Ill. App. 3d 261, 270 (1994), that "for purposes of the application of section 110—14, 'conviction' includes the entry of sentence." The State reads too much into these cases.

Section 110—14 did not indicate that any credit was necessarily awarded *before* the imposition of a fine. Section 110—14 provided that persons incarcerated on a bailable offense and "against whom a fine is levied on conviction of such offense shall be allowed a credit." Ill. Rev. Stat. 1987, ch. 38, par. 110—14. As was recognized in *Smith*, *Hare* appears to reflect an assumption, perhaps because of its underlying facts, that the credit was given only for periods of incarceration prior to trial. Moreover, *Hare* was concerned with issues other than those presented here. Consequently, one cannot rely on *Hare*'s single statement of *dictum* as authority that section 110—14 contemplates operation of the credit only at the trial level.

In *Smith*, the appellate court interpreted the term "conviction" within section 110—14 to include, along with the judgment, the entry of the sentence. The interpretation sought to address whether the period of a defendant's incarceration after trial could be credited against a fine. The interpretation did not address any period during which the credit could be sought. *Hare* and *Smith* thus do not represent authority for the interpretation of section 110—14 urged here by the State.

Viewed as a whole, the plain language of section 110—14 and its amendments indicates the benefit of the credit is not limited to persons who apply for it at the

trial level. *Cf. Hare*, 119 Ill. 2d 441 (declining to interpret section 110—14 as limited to persons who receive only a fine upon conviction or excluding persons who have also received a sentence credit for time spent in custody awaiting trial); *Smith*, 258 Ill. App. 3d at 268-69 (declining to interpret section 110—14 credit as limited only to the period of incarceration before and during trial); *People v. Robinson*, 172 Ill. 2d 452, 462-63 (1996) (declining to interpret Unified Code of Corrections section 5—7—8(b) sentencing credit as limited to time not credited against another sentence). The plain language of section 110—14 and its amendments also carries no indication that application at the trial level is a statutory precondition to the right to any credit. We do not find section 110—14 to be ambiguous in this regard. *Cf. Hare*, 119 Ill. 2d at 447 (finding section 110—14 to be unambiguous).

We agree with defendant that the legislature has provided expressly for procedural time limitation periods when it so intends. See 725 ILCS 5/122—1 (West 1994) (post-conviction, generally, must be filed within three years from date of conviction); 725 ILCS 5/116—1(b) (West 1994) (written motion for new trial must be filed within 30 days from entry of judgment); 730 ILCS 5/5—8—1(c) (West 1994) (a timely motion to reduce sentence must be filed within 30 days after sentence imposed); 725 ILCS 5/116—2(a) (West 1994) (written motion for arrest of judgment must be filed within 30 days from entry of judgment); 725 ILCS 5/114—5(a) (West 1994) (motion for substitution of judge may be made within 10 days after cause placed on judge's trial call). Also, the legislature typically utilizes less oblique means when it intends that a forfeiture of claims or rights occurs. See, *e.g.*, 730 ILCS 5/5—8—1(c) (West 1994) (defendant waives right to challenge correctness of sentence or other aspects of sentencing hearing if claim not included in written motion to reduce sentence within 30

days); 720 ILCS 5/1—6(a) (West 1994) (objections to improper place of trial are waived unless made before trial).

The State acknowledges that absent some ambiguity, the task of discerning legislative intent is normally limited to reading a statute's plain language. The State, nevertheless, maintains that the 1977 and 1994 amendments to section 110—14 represented a material change of law, and that such a change allows for our consideration of the legislative debates surrounding those amendments.

Generally a material change in the language of an unambiguous statute creates a presumption of a change in legal rights, although it can be rebutted by evidence of contrary legislative intent. See *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 252 (1990); *Hare*, 119 Ill. 2d at 450-51. To determine whether a right is being added to or taken from the original act, or whether the provision is being merely interpreted, circumstances surrounding the enactment must be considered. See 1A N. Singer, Sutherland on Statutory Construction § 22.30, at 267 (5th ed. 1993); see also *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 271 (1980). If circumstances indicate that the legislature intended to interpret the original act, the presumption of change will be rebutted. *O'Connor*, 81 Ill. 2d at 271.

Here, the State asserts that the 1977 amendment clarified the existing precondition that defendants must apply for the credit at the trial level before they receive the benefit of any credit. Defendant does not argue the scope and effect of the 1977 amendment inasmuch as he contends that the time limitation claimed by the State has not been shown to exist on the face of the statute or its amendments. Thus, neither party contends that the 1977 amendment changed the law. As such, no issue is joined concerning whether the 1977 amendment is a

substantive change in law or merely a clarification of existing law which normally would necessitate consideration of the legislative debates surrounding the amendment. *Cf. Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 461 (1995) (referring to parties' oppositional positions); *Mikusch*, 138 Ill. 2d at 252 (same).

Concerning the 1994 amendment, the State claims that it changed the law, eliminating the basis on which to allow the credit on appeal. Defendant, by contrast, argues that the amendment did not change the law in that respect. Thus, the issue is joined with respect to the 1994 amendment. In the circumstances presented here, where consideration of legislative debate surrounding the elimination of an oft-interpreted statutory requirement is appropriate, we believe it is advisable to consider also legislative debates surrounding the adoption of that requirement.

The State claims that the legislative debates surrounding the 1977 amendment, explaining the notification requirement, indicate that only a limited opportunity existed at the trial level for seeking the credit, and that the failure to take advantage of that opportunity resulted in forfeiture of the credit. The State maintains that the debates show an intent to link the clerk notification requirement with defendant application to ensure that defendants apply for the credit at the trial level and thereby avoid forfeiting it. Based on this linkage, the State argues elsewhere in its brief that the phrase "at the time of conviction" must be implied to modify language concerning allowance of the credit "upon application of the defendant." According to the State, the debates also indicate "in some way" that even before the defendant application language was added, section 110—14 contemplated that the "opportunity" for the credit would be forfeited unless the credit was applied for at the trial level. In the State's view, the ad-

dition of the clerk notification requirement in 1977 made plain that no opportunity for the credit was available subsequent to trial level proceedings.

A review of the legislative debates belies the State's assertions. In the Illinois House of Representatives, Representative Greiman remarked:

"What's happening now because of the system is that they're not giving credit for time served. A man will serve two or three days then be let out, then get a fine imposed a month later. He doesn't know about this law that he is entitled to. Nobody is checking on it, the clerk doesn't ... in the courtroom doesn't think about it and so he ends up not getting credit for the time served[;] *** therefore, we want the clerk of the court to make a form to give ... to advise that defendant of his rights, that he has it and for the defendant then to in turn sit out the time that he has served. So that he will get appropriate credit against a fine." 90th Ill. Gen. Assem., House Proceedings, June 21, 1977, at 108 (statements of Representative Greiman).

In the Senate, Senator Carroll stated:

"This bill deals with the five dollar credit to be given to people incarcerated other than for certain major crimes. The problem has been that most of them are not aware of the provisions of this nor is it capable for the county clerks or the clerks of the circuit courts of the various counties to enforce the provisions of the bill as it now stands for they don't always know at the time of trial who is on bail, *et cetera*. So this is a change in that to provide that the clerk shall notify the defendant in writing and then he will then make application based on that writing for the five dollar a day credit. This was brought to us by the circuit court clerks in what they feel will be an attempt to better expedite the meaning of the law that has been on the books ***." 80th Ill. Gen. Assem., Senate Proceedings, May 23, 1977, at 47-48 (statements of Senator Carroll).

This commentary does not indicate a concern by the legislature with legal forfeiture of the credit. We agree with the State that the commentary reveals the legislature's concern that defendants were not taking advantage of an opportunity to apply for the credit, and that

the clerk notification requirement was intended to prompt defendants to do so. We do not agree, however, that the commentary indicates the legislature considered this to be a legally limited opportunity to apply, or that defendants suffered a legal forfeiture of the right to the credit by not taking advantage of any practical opportunity to apply for it. The commentary in no way speaks to the issue of any legal inability of defendants to receive the credit through an appeal.

Both parties acknowledge that in 1994, the legislature did not intend to change the aspect of section 110—14 pertaining to defendant application by the elimination of the clerk notification requirement. The State maintains, however, that the 1994 amendment left defendant application intact as a statutory precondition. The State insists the legislature intended that the credit be precluded on appeal. The 1994 legislative debates reveal no such intent.

Essentially, Representative Lang confirmed, when questioned by Representative Wennlund, that the amendment deleting the clerk notification requirement merely "relieves" the circuit clerk of the duty to notify defendants. See 88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 17 (statements of Representatives Wennlund and Lang). These comments do not support the State's position in the least.

The State additionally claims that placement of section 110—14 among bail provisions found in sections 110—11 through 110—18 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—11 through 110—18 (West 1992)), which the State claims concern proceedings leading up to trial and for which appellate review is expressly provided, indicates an intent to preclude the credit on appeal. We disagree.

It is apparent that these provisions are grouped together not on the basis of the procedural stage during

which they are applicable, but on the basis of the general subject matter, bail, which they address. For instance, section 110—11 concerns bail on a new trial (725 ILCS 5/110—11 (West 1992)) and section 110—16 addresses bail bond forfeiture for a defendant's absence at trial (725 ILCS 5/110—16 (West 1992)). Section 110—14 is included here because, as its title states, it concerns "[c]redit for incarceration on bailable offense." 725 ILCS 5/110—14 (West 1992). Also, the bail provisions the State cites as specifically providing for appellate review concern matters involving judicial discretion (see 725 ILCS 5/110—14, 110—5, 110—6 (West 1992)). The statutory right to a *per diem* credit found in section 110—14, by its language, is in the nature of a mandatory right subject to assertion by a defendant. Thus, judicial discretion is not involved in a decision to allow the credit.

Citing a line of cases, emanating from *Winkler*, the State, nevertheless, asserts that the appellate court has correctly recognized the legislative intent in section 110—14 to preclude the credit on appeal (see, *e.g., People v. Stahr*, 255 Ill. App. 3d 624, 627 (1994); *People v. Childs*, 226 Ill. App. 3d 915, 922-23 (1992)). When the legislature amended the statute in 1994, by eliminating the clerk notification requirement, presumably it was aware that reviewing courts had been relying on this foundation to excuse the failure of the precondition, and the elimination of that foundation was intended by the legislature to indicate that the credit was precluded on appeal.

Defendant relies generally on these same cases to assert that the appellate court has consistently declined to find "waiver" of a section 110—14 credit on appeal. Defendant argues that when the legislature amended the statute in 1994, it was presumably aware of this judicial practice and had the legislature intended that

the practice be discontinued, it would have included within the provision an express limitation period that would operate implicitly to waive any unasserted right to a credit. The failure to include such a limitation means that it was not intended by the legislature.

*Winkler* is the seminal case recognizing the credit on appeal during the period between the 1977 and 1994 amendments. *Winkler* found that, although the defendant "failed to apply for the credit upon conviction in the trial court," he would not be denied the credit where there was no indication that he had been notified by the circuit clerk in writing of the credit pursuant to section 110—14. The *Winkler* court modified the judgment to reflect a *per diem* credit of $20 for the four days the defendant had spent in jail. *Winkler*, 77 Ill. App. 3d at 36-37.

Decisions within this period and subsequent to *Winkler* employed slightly different approaches. Several decisions, similar to *Winkler*, acknowledged the defendant's failure to apply previously for the credit, but consistently allowed the credit on appeal based on the lack of any indication that the circuit clerk notified the defendant of section 110—14. See *People v. Roby*, 169 Ill. App. 3d 187, 193 (1988) (failure to make timely application does not preclude credit on appeal); *People v. Johnston*, 160 Ill. App. 3d 536, 544 (1987); *People v. Bratcher*, 149 Ill. App. 3d 425, 430 (1986); *People v. Smith*, 133 Ill. App. 3d 613 (1985); *People v. Young*, 96 Ill. App. 3d 634, 636 (1981). These decisions implied that a defendant's application at the trial level was somehow requisite to the credit, but they did not explain whether such application preconditioned the right or constituted merely evidence of the right's assertion. Unlike *Winkler*, these decisions did not express that defendants were required to apply for the credit upon conviction *in the trial court*.

Other decisions during this same period discussed a defendant's failure to apply for the credit at the trial level in terms of waiver analysis, but consistently declined to find waiver because there was no showing that the defendants were informed as required by the statute. Again, unlike *Winkler*, these decisions did not express that defendants were required to apply for the credit upon conviction *in the trial court. People v. Childs*, 226 Ill. App. 3d 915, 922-23 (1992); *People v. Sinnott*, 226 Ill. App. 3d 923, 935 (1992) (no waiver of issue of credit for failure to present argument at trial or in post-trial motion where no indication that clerk informed defendant of entitlement); see also *People v. Stahr*, 255 Ill. App. 3d 624 (1994) (though defendant did not apply for credit in trial court, "issue" not waived on appeal); *People v. Plante*, 253 Ill. App. 3d 472 (1993) (same); *People v. Jenkins*, 251 Ill. App. 3d 1, 7 (1993); *People v. Tippett*, 232 Ill. App. 3d 921, 922-23 (1992); *People v. Laster,* 208 Ill. App. 3d 482, 483 (1990); *People v. Taylor*, 84 Ill. App. 3d 467, 471 (1980); *People v. Brown*, 83 Ill. App. 3d 261, 262 (1980); see also *People v. Mills*, 239 Ill. App. 3d 997, 999 (1993) (parties' stipulation to fine and costs without mention of credits did not constitute waiver of statutory credits).

The State agrees with these decisions to the extent that they view defendant application at the trial level as somehow requisite to the credit. The State disagrees, however, that a defendant's failure to apply for the credit at the trial level is simply a matter of waiver; failure to apply for the credit at the trial level forfeits the right to the credit.

Based on a plain reading of section 110—14, we believe *Winkler* interpreted section 110—14 incorrectly. A plain reading of section 110—14 during the period between 1977 and 1994 does not indicate that defendants were required to apply for the credit upon their convic-

tion in the trial court. That limitation pertained only to the circuit clerks' obligations. The decisions which subsequently followed *Winkler* avoided making this express statement, and they are inconsistent and somewhat equivocal in their treatment of defendants' failures to apply under the statute. We believe the incorrect interpretation of section 110—14 by *Winkler* contributed to the judicial inconsistency and uncertainty in this area.

Decisions subsequent to the 1994 amendment are not in agreement regarding the effect of the legislature's elimination of the clerk notification requirement. The State recommends *People v. Toolate*, which found that elimination of the clerk notification requirement allowed for application of the "normal rules" of waiver of an issue on appeal. See *Toolate*, 274 Ill. App. 3d at 409. *Toolate* held the issue of a section 110—14 credit was waived for purposes of appeal because the defendant failed to raise the issue in the trial court at sentencing or in a post-trial motion. Accord *People v. Hillsman*, 281 Ill. App. 3d 895, 896 (1996). While not agreeing that waiver analysis was appropriate, the State contends *Toolate* correctly understood that the legislature intended with the 1994 amendment to preclude the credit on appeal. The State cites to no decision that entirely supports its view of section 110—14 following the 1994 amendment.

Two other post-1994 decisions, relied on by defendant, have disagreed with the approach taken by *Toolate*, and instead viewed section 110—14 as conferring a clear statutory right which is not waived despite any failure to raise the "issue" at the trial level. See *Scott*, 277 Ill. App. 3d at 566; *Nixon*, 278 Ill. App. 3d at 460. The *Scott* court expressed its reluctance to find that the right the credit had been waived and stated that "[g]ranting the credit is a simple ministerial act that

will promote judicial economy by ending any further proceedings over the matter." *Scott*, 277 Ill. App. 3d at 566.

We believe the approach taken in *Scott* and *Nixon* is correct. As discussed previously, based on a plain reading of the language of section 110—14, both before the 1994 amendment and subsequent to it, the statutory right to a *per diem* credit is conferred in mandatory terms while being subject to a defendant's application. As such, the "normal rules" of waiver do not apply (see *Toolate*, 274 Ill. App. 3d at 409), and the right is cognizable on appeal as a matter of course subject to a defendant's application for it. The 1994 legislative debates show that the elimination of the clerk notification requirement did not affect this aspect of section 110—14. The 1994 amendment did make clear, by eliminating the clerk notification requirement and its terms, that a defendant's application for the credit was not intended to be conditioned by the terms of the prior-included clerk notification requirement, and that a defendant's statutory right to the credit is not intended to turn, for purposes of review, on notice by the clerk, whether in compliance with the statute or not.

Notably, the mandatory credit in section 5—8—7(b) of the Unified Code has been treated similarly. See *People v. Sizemore*, 226 Ill. App. 3d 956 (1992) (comparing section 5—8—7(b) credit raised on appeal to treatment of section 110—14 credit under same circumstances); *People v. Donnelly*, 226 Ill. App. 3d 771 (1992) (because of statutory right to credit, error regarding credit not waived for failure to raise in trial court); *People v. Beech*, 202 Ill. App. 3d 576 (1990) (emphasizing that credit could have been raised on appeal); *People v. Bates*, 179 Ill. App. 3d 705 (1989) (credit could have been raised on appeal).

## CONCLUSION

We hold that a defendant may be allowed on appeal

a *per diem* credit pursuant to section 110—14 for incarceration prior to sentencing. The judgment of the appellate court, modifying the trial court's judgment of conviction, is affirmed.

*Appellate court judgment affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the *per diem* monetary credit allowed against fines by section 110—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 1994)) may be obtained on appeal even though a defendant has not first applied for the credit in the circuit court. In my view, such a request must be made in the trial court, or else it is lost.

The majority's interpretation of section 110—14 is contrary to both the plain language and the legislative history of that provision. The version of the statute applicable to this case took effect January 1, 1994; it provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110—14 (West 1994).

The majority believes that a defendant who fails to request the credit in the circuit court may wait until the cause is on appeal to seek the same relief from the reviewing court. I disagree with the majority and would instead conclude that a defendant forfeits the statutory entitlement if he does not apply for it in the circuit court. See *People v. Hillsman*, 281 Ill. App. 3d 895 (1996) (finding waiver); *People v. Toolate*, 274 Ill. App. 3d 408 (1995) (same). In my view, the phrase "upon application of the defendant" plainly contemplates that the defendant will request the credit while his case is before the

trial judge, and I do not believe that the legislature intended that the matter of the credit could be raised for the first time on review, without regard to any prior request for it in the court in which the fine was imposed.

The history of section 110—14 provides further proof that the legislature intended for the credit to be forfeited if the defendant did not make an appropriate request in the circuit court. Before 1994, section 110—14 contained an additional sentence requiring the circuit court clerk to "notify the defendant in writing of this provision of the Act at the time he is convicted." 725 ILCS 5/110—14 (West 1992). Under that version of the statute, as the majority opinion notes, the appellate court would excuse a defendant's failure to raise the credit issue in the circuit court if the record did not show that the circuit court clerk had provided the necessary notice. See, *e.g., People v. Stahr,* 255 Ill. App. 3d 624, 627 (1994); *People v. Childs,* 226 Ill. App. 3d 915, 922-23 (1992); *People v. Roby,* 169 Ill. App. 3d 187, 193 (1988); *People v. Winkler,* 77 Ill. App. 3d 35, 37 (1979). Those decisions suggest, of course, that procedural default of the credit issue would have been the consequence of the defendant's failure to seek the credit in the trial court if the clerk had provided the necessary notice or, alternatively, if the statute had not required that any notice be given at all. We must assume that the legislature, when it later amended section 110—14, was aware of the appellate court's longstanding interpretation of the statute. See *People v. Hickman,* 163 Ill. 2d 250, 262 (1994). By eliminating the requirement that the clerk provide notice, the legislature thus removed the very ground on which defendants' default of the credit issue was customarily excused.

Given the text and history of section 110—14, I would conclude that the legislature has intended to limit availability of the *per diem* credit authorized by that

provision to defendants who apply for it in the circuit court.