NO. 4-96-0178

                                    

                         IN THE APPELLATE COURT

                                    

                               OF ILLINOIS

                                    

                             FOURTH DISTRICT

     

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from

          Plaintiff-Appellee,           )    Circuit Court of    

          v.                            )    Pike County 

KENNY W. GWARTNEY,                      )    No. 95CF123

          Defendant-Appellant.          )    

                                        )    Honorable

                                        )    M. Carol Pope,

                                        )    Judge Presiding.

_________________________________________________________________

          JUSTICE GARMAN delivered the opinion of the court: 

          Following a jury trial in the circuit court of Pike

County, defendant Kenny W. Gwartney was found guilty of burglary

(720 ILCS 5/19-1(a) (West 1994)), armed robbery (720 ILCS 5/18-2(a)

(West 1994)), and armed violence (720 ILCS 5/33A-2 (West 1994)). 

Subsequently, the trial court sentenced him to 18 years' imprison-

ment on the armed violence conviction and granted him 139 days of

credit for time spent in jail prior to sentencing.  Defendant

appeals, arguing (1) the trial court erred in instructing the jury

on accountability and (2) he is entitled to 140 days of credit

against his sentence.  We affirm.  

          On October 13, 1995, defendant and Robert Baughman were

each charged by information with one count of burglary, one count

of armed robbery, and one count of armed violence.  A consolidated

jury trial was held on January 11 and 12, 1996.

          Debra Lippincott testified that she is the manager at

Lindsay's Tavern in Pittsfield, Illinois.  During the evening of

October 9, 1995, she was tending bar.  At about 12:15 a.m. on

October 10, 1995, Lippincott had closed the tavern and was counting

her receipts.  She heard a noise in the back room and investigated

it.  When she opened the storeroom door, she was confronted by two

men.  One of the men wore a baseball cap and the other wore some

other type of hat.  Both men wore bandannas over their faces.  One

of the men pointed a shotgun or rifle at her and ordered her to lie

down on the floor.  The other man had a knife.  They went behind

the counter, took a green money bag, and left.  The bag contained

cash and checks from that evening's business.  One of the men wore

a flannel shirt and the other wore a light-colored sweater or

jacket.

          On cross-examination, Lippincott estimated that the

robbery took approximately five minutes.  The back door was not

locked, but the screen door was latched.  All of the other doors

were locked.  Lippincott knew almost everyone in the tavern that

evening.  It was not possible for someone to have gone into the

storeroom while the tavern was open and remain there until after

closing time; she had been in the storeroom throughout the evening

and there was no one back there.

          Jackie Taylor testified that she was working as a

bartender at the Out of Bounds Tavern in Pittsfield on October 9,

1995.  At approximately 11:38 p.m., when she was closing the

tavern, two men approached her at the door.  One man wore a black

stocking cap and the other wore a baseball cap.  Both men wore

flannel shirts and blue jeans.  She identified defendant as one of

the men.  He asked if he could come in, and Taylor told him the

tavern was closed.  The men walked away.  Taylor gathered her

belongings, locked up the tavern, and went out to her car.  The men

were standing in the alley watching her.  When she got into the car

and started it, the men had disappeared down the alley.  She drove

through the alley and saw the men standing near a Dumpster.  She

could not identify the other man.

          Pike County sheriff's deputy John Pennock testified that

he was on patrol during the early morning hours of October 10,

1995.  At about 1:10 a.m., he stopped a vehicle traveling eastbound

on Washington Street in Pittsfield for failing to dim its head-

lights.  The stop was made seven blocks from Lindsay's Tavern. 

There were two men in the car.  Pennock identified defendant as the

driver and Baughman as the passenger.  Defendant told Pennock he

was driving his friend home; they had been out "messing around"

that night.  Defendant wore a baseball cap, a gray T-shirt, and

blue jeans.  The traffic stop took no more than two minutes.

          Approximately 15 minutes later, Pennock was summoned to

Mississippi Street by Deputy Paul Petty.  A car was stopped in the

road and a man was kicking the front tires.  When Pennock arrived,

he saw it was the same vehicle he had previously stopped.  Both

defendant and Baughman were there.  Defendant explained he was

checking his brakes.  This stop occurred approximately four blocks

from the previous traffic stop.  Defendant had a nice demeanor and

did not seem nervous during either traffic stop.

          Neil Roberts testified that he was employed by Robert's

Automotive and Machine in Mt. Sterling, Illinois.  He had done some

machinery work for Baughman during April 1995.  Baughman did not

come back in to pay for the work until October 10, 1995.  The total

bill was $148.  Baughman paid in cash and received a receipt.

          Deputy Chris Dolbeare testified that he participated in

the robbery investigation.  In an alley near Lindsay's Tavern, he

recovered a 12-gauge sawed-off shotgun.  The gun was loaded with

two 12-gauge shells.  Dolbeare also participated in a search of

defendant's vehicle and recovered a knife, a 12-gauge shotgun

shell, a plaid shirt, and a purple sweatshirt.

          Master Sergeant Kenneth Yelliott of the Illinois State

Police testified that on October 13, 1995, he and Trooper Bradley

Lacy conducted a search of Baughman's residence.  He recovered a

coffee can containing water and pieces of charred paper.  The

charred pieces of paper were identified as checks that had been

written to Lindsay's Tavern.

          Trooper Lacy testified that he also participated in the

search of Baughman's residence.  He recovered a green money bag

with the words "Lyndle Lindsay" written on it in large black print. 

He found the bag under a stack of hand towels in the cabinet

beneath the bathroom sink.  Lacy also recovered a shoe box that

contained a stack of 42 $1 bills and a receipt from Robert's

Automotive and Machine.

          Pamela Baughman testified that she was married to

Baughman for five years.  In the early morning hours of October 10,

1995, she was awakened when Baughman came into their bedroom.  She

saw that he had money in his hand.  She did not know how much money

he had, but it was a large sum.  During the search of the resi-

dence, she directed Yelliott and Lacy to the coffee can that

contained the burned checks.  The checks were not written from her

account or Baughman's account.  She first noticed the green money

bag under the towels on the morning of the police search; she did

not know where it came from.

          The jury found both defendant and Baughman guilty on all

three counts.  At the sentencing hearing held on February 29, 1996,

the trial court sentenced defendant to 18 years' imprisonment on

the armed violence count.  The court also ordered that defendant

receive 139 days of credit for time spent in jail prior to

sentencing.  Defendant filed a post-trial motion, which the trial

court denied.  This timely appeal followed.

          Defendant first argues that the trial court erred in

giving the jury an instruction on accountability.  He contends the

evidence showed that he was either guilty as a principal in the

robbery or he played no part in the crimes whatsoever.  The

instruction, he claims, allowed the jury to find him guilty based

upon evidence that Baughman participated in the robbery.  We

disagree.

          It is well settled that an accountability instruction

that is inappropriately given does not constitute reversible error

where there is sufficient evidence from which the jury could have

found the defendant guilty as a principal.  People v. Jefferson,

227 Ill. App. 3d 491, 496, 592 N.E.2d 134, 138 (1992); People v.

Andrews, 95 Ill. App. 3d 595, 598, 420 N.E.2d 509, 511 (1981).  In

this case, the State presented evidence showing that defendant and

another man tried to enter the Out of Bounds Tavern at closing time

on October 9, 1995, but were not allowed in.  The men lingered in

a nearby alley as the bartender left the tavern.  Shortly thereaf-

ter, two men fitting a similar description robbed Lindsay's Tavern. 

They were armed with a shotgun and a knife; they took a green money

bag filled with cash and checks.  Approximately one hour later,

defendant's vehicle was stopped by Pennock.  Defendant told Pennock

he and his passenger, Baughman, were out that night and he was

driving Baughman home.  A 12-gauge shotgun was later found in an

alley near the crime scene.  When defendant's vehicle was searched

two days later, police found a knife, a 12-gauge shotgun shell, and

a plaid shirt.  When Baughman's residence was searched, police

found charred checks written to Lindsay's Tavern and a green money

bag imprinted with the words "Lyndle Lindsay."  Clearly, there was

sufficient evidence from which the jury could have found defendant

guilty of the offenses as a principal.  Thus, any error in giving

the instruction would have been harmless.

          Nevertheless, on the merits, we find no error on the part

of the trial court.  Both the State and the defendant are entitled

to the submission of appropriate jury instructions on the law that

applies to their theory of the case if there was evidence to

support the theory.  People v. Gilliam, 172 Ill. 2d 484, 519, 670

N.E.2d 606, 622 (1996).  Moreover, very slight evidence upon a

given theory of a case will justify the giving of an instruction. 

People v. Jones, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997).

          Under Illinois law, a person is legally accountable for

the conduct of another when:

               "Either before or during the commission

          of an offense, and with the intent to promote

          or facilitate such commission, he solicits,

          aids, abets, agrees or attempts to aid, such

          other person in the planning or commission of

          the offense."  720 ILCS 5/5-2(c) (West 1994).

          Here, evidence showed that defendant and Baughman were

out driving together during the early morning of October 10, 1995. 

Defendant told Pennock they had been out together that evening and

he was taking Baughman home.  A knife, a 12-gauge shotgun shell,

and a plaid shirt were later found in defendant's vehicle.  These

facts support an accountability theory.  The jury could easily have

concluded that defendant worked with Baughman to commit the robbery

by driving to and from Lindsay's Tavern and by carrying the robbery

weapons in his vehicle.  Therefore, we hold the trial court's

decision to instruct the jury on accountability was not error.

          Defendant's remaining argument is that the trial court

erred in granting him 139 days of credit against his sentence.  He

maintains, and the State concedes, that he is entitled to 140 days

of credit.  Based upon our review of the record, we disagree and

reject the State's concession.  In People v. Donnelly, 226 Ill.

App. 3d 771, 779, 589 N.E.2d 975, 980 (1992), this court addressed

the subject of computing a defendant's credit for time served at

the sentencing hearing and stated:

               "Because of the statutory right to the

          credit, we hold that the error in computing

          the credit is not waived by failure of the

          defendant *** to call the error to the trial

          court's attention.  *** [P]roper trial-court

          practice at the time of sentencing would in-

          clude taking a few additional minutes to

          discuss credit-time computation with the

          prosecutor, defense counsel, and defendant--

          and then fix the number of days.  From our

          experience, that effort might well avoid the

          loss of labor necessitated in the appellate

          process and the remandment process."  

          Not long thereafter, this court decided People v. Curtis,

233 Ill. App. 3d 416, 420, 599 N.E.2d 101, 103 (1992), and, citing

Donnelly, stated:  

          "Both the State's Attorney and defense counsel

          have an obligation to assist the court, and

          both are obligated to make sure the defendant

          receives neither more nor less than the time

          credit to which he is entitled.  We see little

          justification or explanation for errors in

          computing such credit."  (Emphasis in origi-

          nal.)  

In People v. Steskal, 236 Ill. App. 3d 821, 824, 602 N.E.2d 977,

979 (1992), this court reaffirmed the views stated in Curtis, noted

that neither the State nor defense counsel in that case offered the

trial court any assistance in computing credit, and wrote the

following:

          "The trial judge should seek confirmation from

          defense counsel and the [State] as to the

          accuracy of [the probation office's presen-

          tence report] computation [of the total days

          for which defendant is entitled to credit for

          time served]."  

          The present case differs from Donnelly, Curtis, and

Steskal because the records in each of those cases were silent as

to the defendant's agreement with the trial court's determination

of the number of days for which the defendant was entitled to cred-

it for time served.  Here, however, the record before us shows that

the trial court did precisely what this court urged in Donnelly,

Curtis, and Steskal; namely, (1) it consulted with the State and

defense counsel regarding the credit defendant was purportedly due

for time served, (2) it sought--and received (through defense

counsel)--defendant's input on and agreement with the total number

of days' credit, and (3) it corrected the number of days' credit

according to defense counsel's request.  We conclude defendant

waived any claim for credit beyond that requested at the time of

the sentencing hearing.

          In concluding that defendant in this case has waived his

argument on appeal that he is entitled to an additional day's

credit for time served, we are mindful of the recent decision of

the supreme court in People v. Woodard, 175 Ill. 2d 435, 677 N.E.2d

935 (1997).  In that case, the supreme court overruled the decision

of this court in People v. Toolate, 274 Ill. App. 3d 408, 654

N.E.2d 605 (1995), and held that the $5-per-diem monetary credit

against the fine imposed for time spent in jail prior to sentenc-

ing, provided under section 110-14 of the Code of Criminal

Procedure of 1963 (Code) (725 ILCS 5/110-14 (West 1994)), may be

allowed even on appeal.  Woodard, 175 Ill. 2d at 456-57, 677 N.E.2d

945-46.  In our judgment, Woodard and Toolate are distinguishable,

since the records of the sentencing hearing in each were silent on

the subject of the defendant's credit under section 110-14 of the 

Code against the fine the court imposed.  See Woodard, 175 Ill. 2d

at 438, 677 N.E.2d at 937; Toolate, 274 Ill. App. 3d at 409, 654

N.E.2d at 606.  Here, however, defendant was not silent at the

sentencing hearing.  Instead, he got the sentence credit correction

that he sought.  Thus, this case is more like those situations in

which the defendant not only fails to object, but affirmatively

concurs in the action of the trial court, thereby waiving any

objection to the action.  

          Although it appears defendant was entitled to 140 days of

credit, we fail to see how this mistake can be attributed to the

trial court.  Rather, the error in calculating defendant's sentence

credit was the result of defense counsel's representations. 

Accordingly, defendant cannot now complain.  As stated by our

supreme court in People v. Heard, 396 Ill. 215, 219-20, 71 N.E.2d

321, 323 (1947):

          "It is a well-settled principle of law that an

          accused may not ask the court to proceed in a

          given manner and then assign as error in a

          court of review the ruling or action which he

          procured."  People v. Heard, 396 Ill. 215,

          219-20, 71 N.E.2d 321, 323 (1947).

Accord People v. Lowe, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1169

(1992).

          For these reasons, we affirm defendant's convictions and

sentence.

          Affirmed.

          KNECHT, J., concurs.

          McCULLOUGH, J., concurs in part and dissents in part.

          JUSTICE McCULLOUGH, concurring in part and dissenting in

part:

          I agree that the trial court did not err in instructing

the jury on accountability but do not agree that the defendant is

foreclosed from receiving 140 days' credit for time served as

conceded by the State.

          Here the defendant, the State, and this court agree that

"defendant was entitled to 140 days of credit."  Slip op. at 10.  

Woodard (175 Ill. 2d at 450, 677 N.E.2d at 942) concerned a $5

credit "'upon application of the defendant.'"  Even though no

application was made, there was no waiver.  I refer to my dissent

in People v. Moore, No. 4-96-0188 (June 30, 1997), ___ Ill. App. 3d

___, ___ N.E.2d ____.