THIRD DIVISION
FILED: July 26, 2006

No. 1-05-2660

| | | |
|---|---|---|
| UNITED AIRLINES, INC., | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellee, | ) | COOK COUNTY |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE OF THE STATE OF | ) | |
| ILLINOIS, | ) | HONORABLE |
| | ) | ALEXANDER P. WHITE, |
| Defendant-Appellant. | ) | JUDGE PRESIDING. |

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

This is an appeal from an order of the circuit court granting summary judgment in favor of United Airlines, Inc. (United) on its complaint for administrative review of a decision of the Department of Revenue of the State of Illinois (Department). The underlying issue is whether the kerosene-type jet fuel used by United in the operation of its airline business from July 1, 2000, through October 31, 2000, constituted "motor fuel" within the meaning of section 1.1 of the Motor Fuel Tax Law (35 ILCS 505/1.1 (West 2000)) and, as a consequence, qualified for a temporary use tax reduction. For the reasons which follow, we conclude that it did not and, therefore, reverse the judgment of the circuit court and reinstate the Department's decision in this matter.

The facts relevant to our resolution of this case are not in dispute. United is in the business of providing air transportation, cargo, and other related services. In order to

1-05-2660

supply fuel for its airplanes and ground vehicles at its Chicago facility during the relevant time period, United imported kerosene-type jet fuel into the State of Illinois.

Public Act 91-872 amended, inter alia, the Use Tax Act (35 ILCS 105/1 et seq.(West 2000)), to temporarily reduce the tax rate for the sale and use of "motor fuel" from 6.25% to 1.25%. Specifically, the legislation, in relevant part, added the following paragraph to section 3-10 of the Use Tax Act:

> "Beginning on July 1, 2000 and through December 31, 2000, with respect to motor fuel, as defined in Section 1.1 of the Motor Fuel Tax Law, and gasohol, as defined in Section 3-40 of the Use Tax Act, the tax is imposed at the rate of 1.25%." 35 ILCS 105/3-10 (West 2000)

After the adoption of P.A. 91-872, the Department promulgated a regulation effective July 12, 2000, stating that jet fuel does not constitute motor fuel and was, therefore, ineligible for the temporary tax rate reduction. See 24 Ill. Reg. 11313 (eff. July 12, 2000); 86 Ill. Adm. Code § 130.101(b).

United paid use tax on the jet fuel it imported into Illinois between July 1, 2000, and October 31, 2000, at the rate of 6.25%. Subsequently, however, United filed amended use tax returns for that period, claiming that it overpaid the tax and requested a $8,926,174 refund. After the Department found an error in United's

2

calculations, the refund request was reduced to $4,502,885. United's claim was based on the difference between the 1.25% tax rate imposed on motor fuel by P.A. 91-872 and the 6.25% rate that it used to calculate its tax obligation.

The Department issued a notice denying United's claim for a refund, and United filed a timely protest and request for an administrative hearing. During the course of the administrative proceeding, United and the Department stipulated to a number of facts relevant to a disposition of the matter. Based upon those stipulations, an administrative law judge (ALJ) issued a written "Recommendation for Disposition" in which he recommended to the Director of the Department of Revenue (Director) that the matter be resolved against United and that the denial of its claim for a refund be "finalized." The basis of the ALJ's recommendation is his conclusion that the kerosene-type jet fuel used by United was not "motor fuel" within the meaning of section 1.1 of the Motor Fuel Tax Law. The Director subsequently issued a written notice accepting the ALJ's recommendation as dispositive of the issues.

United filed a timely complaint for administrative review in the circuit court, requesting, in addition to other relief, an order reversing the Department's final administrative decision denying its claim and directing the Department to issue a refund in the sum of $4,502,885, plus interest. After the parties were

3

1-05-2660

joined in issue, United moved for summary judgment supported factually by the stipulations that the parties entered into during the administrative hearing. The circuit court granted United's motion for summary judgment, finding that the statutes at issue are clear and unambiguous and that the jet fuel used by United falls within the statutory definition of "motor fuel." Based on those findings, the circuit court concluded that the jet fuel used by United qualified for the temporarily reduced use tax rate. This appeal followed.

In urging reversal of the circuit's court's judgment, the Department argues both that the Director correctly held that "the General Assembly did not intend for jet fuel to be considered motor fuel eligible for the Temporary Rate Reduction" and that the Department regulation which provided that jet fuel is not considered motor fuel for purposes of the temporary use tax rate reduction "is valid." Directly at issue is the question of whether United's kerosene-type jet fuel is "motor fuel" as defined in section 1.1 of the Motor Fuel Tax Law.

Section 1.1 defines "Motor Fuel" as:

"all volatile and inflammable liquids produced, blended or compounded for the purpose of, or which are suitable or practicable for, operating motor vehicles. Among other things, 'Motor Fuel' includes 'Special Fuel' as

4

1-05-2660

defined in Section 1.13 of this Act."  35 ILCS 505/1.1
(West 2000).

Section 1.13 of the of the same act provides, in relevant part, that:

"'Special Fuel' means all volatile and inflammable liquids capable of being used for the generation of power in an internal combustion engine ***."  35 ILCS 505/1.13 (West 2000).

The record in this case contains the parties' stipulations that: United principally used the kerosene-type jet fuel that it imported into Illinois during the months at issue to operate its airplanes; the engines in United's airplanes are internal combustion engines; and the kerosene-type jet fuel used by United is a volatile and inflammable liquid capable of being used for the generation of power in an internal combustion engine. Nevertheless, the Department asserts that the temporarily reduced use tax rate of 1.25% did not apply to kerosene-type jet fuel and that United is not entitled to the claimed refund. The Department reasons that the General Assembly did not intend aviation fuel, including the kerosene-type jet fuel used by United, to be considered "motor fuel" as defined in section 1.1 of the Motor Fuel Tax Law.  In support of its argument in this regard, the Department notes that several sections of the Motor Fuel Tax Law refer to

5

1-05-2660

aviation fuel separate and distinct from motor fuel. Section 1.19 defines "fuel" as "all liquids defined as 'Motor Fuel' in Section 1.1 of this Act and aviation fuels and kerosene, but excluding liquified petroleum gases." 35 ILCS 505/1.19 (West 2000). Section 2a of the Motor Fuel Tax Law, which imposes a per gallon tax on the receiver of fuel for sale or use in this State, also references aviation fuel as distinct from "motor fuel" as defined by Section 1.1 and exempts from taxation the aviation fuel and kerosene imported or received at certain airports and used by various described entities in their activities at those airports. See 35 ILCS 505/2a (West 2000). Finally, section 12a of the Motor Fuel Tax Law authorizes agents or employees of the Department to enter upon the premises of users or suppliers of "motor fuel or special fuels" and examine their books and records "pertaining to motor fuel, aviation fuels, home heating oils, kerosene, or special fuels, to determine whether or not the taxes imposed by this Act have been paid." 35 ILCS 505/12a (West 2000). The Department contends that, had the legislature considered aviation fuel to fall within the section 1.1 definition of "motor fuel," there would have been no need to specifically refer to aviation fuel separately in other sections of the Motor Fuel Tax Law.

The Department also argues that the specific type of jet fuel at issue falls outside of the definition of motor fuel in section

6

1-05-2660

1.1 of the Motor Fuel Tax Law.  The Department notes that the Federal Clean Air Act prohibits the introduction into any motor vehicle fuel which contains a concentration of sulfur in excess of .05% by weight (42 U.S.C.A. § 7545(g)(2) (West 2000)) and the manufacture, sale or transportation of any such fuel for use in motor vehicles (40 C.F.R. § 80.29(a)(1)).  Based upon the parties' stipulation that the kerosene-type jet fuel used by United had a sulfur percentage, by weight, greater than .05%, the Department concludes that the fuel was not produced, blended or compounded for the purpose of, or suitable or practicable for, operating motor vehicles and is, therefore, not motor fuel within the meaning of section 1.1.  In further support of its argument in this regard, the Department correctly observes that United's airplanes are not "motor vehicles" within the meaning of the term as defined in section 1.3 of the Motor Fuel Tax Law. 35 ILCS 505/1.3 (West 2000).

Finally, the Department argues that the legislative history surrounding the passage of P.A. 91-872 which temporarily reduced the use tax on motor fuel supports the proposition that the General Assembly "intended the tax relief to apply to the motoring public and not commercial aviation."  Specifically, the Department relies upon excerpts from the speeches of both representatives and senators during the legislative debates, stating that the purpose of the legislation was to make the price of gasoline in Illinois

7

competitive with the price in surrounding states and to give money back to Illinois taxpayers in the form of relief at the gas pump.

In support of the circuit court's judgment, United asserts that the parties' factual stipulations establish that its kerosene-type jet fuel satisfies the statutory definition of "special fuel" and, as a consequence, falls within the definition of "motor fuel." See 35 ILCS 505/1.1, 1.13 (West 2000). United argues that, since its jet fuel is "motor fuel" as defined in section 1.1 of the Motor Fuel Tax Law, the fuel qualifies for the temporary use tax rate reduction and it is, therefore, entitled, as a matter of law, to a refund of overpaid use taxes covering the period from July 1, 2000, through October 31, 2000. According to United, the relevant statutory provisions are clear and unambiguous and must be given effect as written, without resort to any aids of construction, including legislative history. See Nevitt v. Langfelder, 157 Ill. 2d 116, 134, 623 N.E.2d 281 (1993).

In interpreting statutes, our function is to give effect to the intention of the legislature. Quad Cities Open v. City of Silvis, 208 Ill. 2d 498, 508, 804 N.E.2d 499 (2004). Our analysis properly begins with the language of the statute. People v. Woodard, 175 Ill. 2d 435, 443, 677 N.E.2d 935 (1997). Where the language of the statute is clear and unambiguous, we must give effect to the plain and ordinary meaning of the language used

without resort to other tools of statutory construction. Quad Cities Open, 208 Ill. 2d at 508. We may not read into a statute exceptions, limitations, or conditions not expressed by the legislature. Woodard, 175 Ill. 2d at 443. We evaluate the provision as a whole, rather than reading phrases in isolation. Paris v. Feder, 179 Ill. 2d 173, 177, 688 N.E.2d 137 (1997). Only where the language of a statute is ambiguous may we resort to tools of construction. People v. Glisson, 202 Ill. 2d 499, 505, 782 N.E.2d 251 (2002).

From the stipulations of the parties, it is clear that United's jet fuel satisfies the definition of "special fuel" set forth in section 1.13 of the Motor Fuel Tax Law (35 ILCS 505/1.13 (West 2000)). The disposative issue, however, is whether all special fuel constitutes "motor fuel" within the meaning of section 1.1 of that act. United's argument addressed to this issue is based on a faulty premise; namely, that "section 1.1 of the MFTL [Motor Fuel Tax Law] explicitly states that all special fuels are motor fuels." (Emphasis added.) Section 1.1 states no such thing. As noted earlier, the statute actually states that "[a]mong other things, 'Motor Fuel' includes 'Special Fuel.'" See 35 ILCS 505/1.1 (West 2000).

When the statutory definition of "motor fuel" is read in its entirety, we believe that it unambiguously provides that only those

9

1-05-2660

special fuels which are "produced, blended or compounded for the purpose of, or which are suitable or practical for, operating motor vehicles" (See 35 ILCS 505/1.1 (West 2000)) are included. The first sentence of the statute provides the definition. The second sentence upon which United relies states that "special fuels" are included within the definition, but, we believe, only if they otherwise fall within the specifications set forth in the first sentence.

In this case, United's jet fuel, containing sulfur in excess of .05% by weight, could not legally be used in motor vehicles (see 42 U.S.C.A. § 7545(g)(2) (West 2000), 40 C.F.R. § 80.29(a)(1)) and, as a consequence, does not fall within the statutory definition of "motor fuel." For this reason, we conclude that United's jet fuel does not qualify for the temporary use tax rate of 1.25% provided for in P.A. 91-872.

Even if we were to find that the definition of "motor fuel" contained in section 1.1 of the Motor Fuel Tax Law is ambiguous, we would, nevertheless, come to the same resolution in this case. Words and phrases contained within a statute are not construed in isolation; rather, they are interpreted in light of other relevant provisions of the statute. Burger v. Lutheran General Hospital, 198 Ill. 2d 21, 40, 759 N.E.2d 533 (2001).

It is only if the Department's interpretation of the statute is

10

accepted that the definition of "motor fuel" can be read in harmony with other relevant sections of the Motor Fuel Tax Law. Excluding from the definition of motor fuel all jet or aviation fuels which, although falling within the definition of "special fuel," are not suitable for use in motor vehicles explains the distinctions drawn by the legislature in sections 1.19, 2a, and 12a between motor fuel and both aviation fuel and special fuels and also eliminates any conflict between those sections and the definition of "motor fuel" set forth in section 1.1.

For the reasons stated, we reverse the summary judgment entered by the circuit court in favor of United and remand this matter for further proceedings not inconsistent with this opinion.

Reversed and remanded.

THEIS and KARNEZIS, JJ., concur.