THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED SMITH, Defendant-Appellant.

Second District   No. 2—92—0008

Opinion filed February 23, 1994.

262

G. Joseph Weller, of State Appellate Defender's Office, and Anne S. Quincy, both of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford, and Cheryl C. Zeleznak, of Oak Forest (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a bench trial, defendant, Fred Smith, was convicted of armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2 (now 720 ILCS 5/33A—2 (West 1992))), unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(b)(2) (now 720 ILCS 570/401(b)(2) (West 1992))), and unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 705(d) (now 720 ILCS 550/5(d) (West 1992))). The court

sentenced defendant to two-year and four-year prison terms for the drug offenses and eight years for armed violence, all sentences to run concurrently. The court also imposed a $100 street-value fine and a statutory fine of $3,480, to be paid with currency previously seized from defendant. On appeal defendant contends that (1) his conviction of and sentence for unlawful possession of a controlled substance with intent to deliver must be vacated; (2) his eight-year sentence on the armed violence conviction must be reduced; and (3) he is entitled to credit against both his sentence and the street-value fine imposed on him.

The charges against defendant resulted from the execution of a search warrant in defendant's home. Detectives Versetti, Nelson, and Vincere, Rockford police officers assigned to the Rockford-Winnebago Metro Narcotics Unit, testified regarding the execution of the warrant. The officers arrived at defendant's one-story house at approximately 12:45 p.m. Detective Vincere pounded on the front door and announced "police search warrant." When no one answered after a time, the officers forced the door open. Detective Nelson, who was the first to enter the residence, immediately saw the defendant, seated in a wheelchair, rolling backward from the foyer or living room area into the kitchen. The defendant's legs had been amputated, approximately four inches above his knees. The officer ran toward the defendant. Upon reaching the kitchen area, Nelson saw what appeared to be the butt of a gun sticking out from the crotch area between defendant's legs. The officer took the gun, a loaded .357 magnum, and did a quick pat-down search of defendant for other weapons. Subsequently, Nelson conducted a thorough search of defendant's person. Inside the defendant's pinned-up left pant leg, the officer found a white napkin that contained eight knotted plastic bag corners, each containing cocaine. Nelson also found $3,480 in cash and some food stamps in defendant's pocket and wallet. During the search of the house, the police officers found two bags of cannabis, one inside a barbecue grill on the front porch and the other in a chest-type freezer in the kitchen. Defendant had a valid firearm owner's identification card for the handgun taken by Detective Nelson.

■ Defendant first contends that his felony conviction of unlawful possession of a controlled substance with intent to deliver must be vacated. The State agrees. It is well settled that multiple convictions of both armed violence and the underlying felony cannot stand where a single act is the basis for both charges. (*People v. Payne* (1983), 98 Ill. 2d 45, 54-55; *People v. Johnson* (1990), 200 Ill. App. 3d 1018, 1020-21.) Defendant was charged with unlawful possession with intent to

deliver the cocaine found on his person. He was also charged with armed violence, an offense predicated on the first offense, *i.e.*, unlawful possession of the cocaine with intent to deliver. Thus, defendant's possession of the cocaine was the basis for both charges. Where multiple convictions arise from the same act, the conviction should be entered and the sentence imposed upon only the most serious offense. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170.) Here, the most serious offense was armed violence. Accordingly, defendant's conviction of and sentence for unlawful delivery of a controlled substance with intent to deliver must be vacated.

Defendant next asserts that the trial court improperly enhanced his sentence for armed violence from the minimum of six years to eight years on the basis that he possessed a loaded handgun. Since such possession was an element of the offense of armed violence, according to defendant, the trial court should not have relied on it as an aggravating factor in imposing sentence. Defendant asks that we reduce his sentence to six years.

The imposition of a sentence is a matter of judicial discretion, and the standard of review to determine whether a sentence is excessive is whether the trial court has abused its discretion. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297-98; *People v. McCain* (1993), 248 Ill. App. 3d 844, 850.) A trial court's sentencing decisions are entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154; *People v. Gard* (1992), 236 Ill. App. 3d 1001, 1016.) We find no abuse of discretion in this case.

The statutory factors in aggravation, which may be considered in imposing a more severe sentence, include the factor that "the defendant's conduct caused or threatened serious harm" (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1) (now 730 ILCS 5/5—5—3.2(a)(1) (West 1992))). Defendant, however, relies on the rule that, generally, the consideration of a factor which is necessarily implicit in an offense cannot be used as an aggravating factor in sentencing. (See *People v. Saldivar* (1986), 113 Ill. 2d 256, 271-72; *People v. Conover* (1981), 84 Ill. 2d 400, 404-05.) To support his position that the trial court improperly enhanced his sentence, defendant cites remarks made by the court just prior to announcing sentence. After commenting on its perception of the factors in aggravation and mitigation, the court spoke about defendant's having a loaded weapon of a particular type and the fact that the gun put everyone on the premises at risk when the warrant was executed. Defendant emphasizes the court's conclusion:

> "And there has to be something done because of that, I think otherwise the 6 year minimum would be appropriate here."

The court then imposed minimum sentences for the drug possession offenses. Returning to the armed violence conviction, the court continued:

> "On the Armed Violence, which would increase the penalty, it makes it from a probationable offense to a mandatory 6 years in the penitentiary, he is being punished for possession of the weapon in that regard, I am going to impose an 8 year sentence in the Department of Corrections for the Armed Violence charge."

Defendant concludes from these comments that the trial court added two years to the minimum sentence merely because of the presence of the gun.

■ Defendant's argument is not persuasive when viewed in light of the totality of the trial court's remarks. Early in its discussion, the court stated:

> "With regard to the use of the weapon or having the weapon available, a loaded gun on his person, not tucked away in his night stand [sic] or something like that, is obviously a concern to the Court. He does have the prior offenses and maybe some of them are only an FOID card, but *** it's the possession of a weapon on a number of occasions here when he shouldn't have had it, not that he used them to intimidate or hurt or threaten anybody, but he had these weapons."

Again, just prior to its comment that the six-year minimum would otherwise be appropriate, the court said:

> "[C]ertainly the mere possession of the weapon on his person being loaded and the type of weapon it was and the fact that the officers had to enter the premises it does *** put both the Defendant and anyone else who is on the premises and the officers at risk."

We think it is evident from these remarks that the trial court was concerned about more than the mere fact that the gun was present in defendant's house. The court was justifiably heedful of the kind of gun involved, the fact that it was loaded and on defendant's person, well within his reach, at a time when, because he did not respond to their pounding or warning calls, the police forcibly entered defendant's premises. The court repeatedly noted the risk created by the presence of the gun on defendant's person under the circumstances. Significantly, it was in this context that the court expressed concern regarding defendant's prior history with weapons. The record reflects that the trial court correctly perceived that there was more involved than the mere presence of a gun in defendant's house.

While defendant recognizes that a sentencing court is vested with broad discretion in arriving at the appropriate penalty, he cites *People v. Saldivar* (1986), 113 Ill. 2d 256, for the proposition that the sever-

ity of the sentence should depend on the degree of harm caused by the defendant's conduct and points out that no harm came to anyone in this case. In *Saldivar*, the court ruled that it was improper for a court imposing sentence for involuntary manslaughter to rely on the bare fact of the death of the victim as an aggravating factor. (*Saldivar*, 113 Ill. 2d at 271-72.) However, in reaching its conclusion the court discussed at length the parameters of the rule that a factor implicit in an offense should not be used as an aggravating factor. Stating that *Conover*, on which the defendant in *Saldivar* relied, stands for the rule, the court added:

> "[T]his court did not intend a rigid application of the rule, thereby restricting the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence." (*Saldivar*, 113 Ill. 2d at 268.)

Noting that the Illinois Constitution provides that penalties must take into consideration both the seriousness of the offense and the defendant's potential for rehabilitation (see Ill. Const. 1970, art. I, § 11), the court observed:

> "A reasoned judgment as to the proper penalty to be imposed must therefore be based upon the particular circumstances of each individual case." (*Saldivar*, 113 Ill. 2d at 268.)

A reasoned judgment, according to the *Saldivar* court, turns on many factors. Those factors relate not only to the defendant himself but also to the nature and circumstances of both the overall offense and each element of the offense as committed by the defendant. (*Saldivar*, 113 Ill. 2d at 268-69.) The court summed up its position as follows:

> "Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. *** [T]he commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm *or threatened harm*. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor." (Emphasis added.) *Saldivar*, 113 Ill. 2d at 269.

As we read it, *Saldivar* does not require that anyone have been harmed in order to increase a sentence. In fact, *Saldivar* makes clear that a trial court may, indeed, consider the degree of *threatened* harm created by the commission of an offense. The trial court here correctly determined that, under the circumstances of this particular armed violence offense, the possession of the gun by defendant created a significant risk of harm to all who were present. As the trial court observed, this was not a case where the gun was tucked away in the relative safety of a nightstand when the police entered

defendant's home. The addition of two years to the minimum sentence available to defendant does not reflect an abuse of discretion.

■ Finally, defendant urges that he is entitled to a credit against his sentence. He claims he was not given credit for March 15, 1990, the day he was taken into custody. The State does not dispute that defendant was in custody on March 15 or that he was not given credit for that day. A defendant held in custody for any part of the day should be given credit against his sentence for that day. (*People v. Williams* (1986), 144 Ill. App. 3d 994, 996; *People v. Johns* (1984), 130 Ill. App. 3d 548, 549.) Accordingly, defendant must be allowed the additional day, for a total of 115 days' credit against his term of imprisonment.

Defendant also contends that he is entitled to a complete credit against the $100 street-value fine imposed upon him. He correctly points out that the mittimus reflects neither the fines imposed on him nor any credits which may have accrued against those fines. Defendant seeks credit against his fine pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 110—14 (now 725 ILCS 5/110—14 (West 1992))), which states in relevant part:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. The clerk of the court shall notify the defendant in writing of this provision of the Act at the time he is convicted. However, in no case shall the amount so allowed or credited exceed the amount of the fine."

Defendant claims, and the State does not dispute, that there is nothing in the record to show he was notified by the clerk of the court as required by section 110—14.

The State does, however, contest defendant's right to the credit on the ground that he does not meet the statutory prerequisites. Specifically, the State correctly points out that defendant supplied bail immediately after his arrest. Further, according to the State's argument, section 110—14 applies only to defendants who are incarcerated while awaiting trial.

■ With regard to first part of the State's argument, the provision of bail does not preclude the application of section 110—14. In *People v. Plante* (1993), 253 Ill. App. 3d 472, 474-75, defendant was given the $5-a-day credit for nine days he was held in jail prior to supplying bail. This court stated that the statute "makes no exception for defendants who are temporarily incarcerated on a bailable offense, but who eventually are released upon the payment of bail." The de-

fendant was entitled to credit for the days he was in custody but did not supply bail. Similarly, in *People v. Stahr* (1994), 255 Ill. App. 3d 624, 627, we cited *Plante* and gave the defendant a $5 credit for the day she was arrested even though she posted bail later that same day. Hence, that defendant supplied bail does not preclude an award of the section 110—14 credit against the fine.

The State's further contention, that section 110—14 applies only to incarceration prior to trial, is a more complicated issue. It is undisputed that only 1 of the 115 days of custody claimed by defendant occurred prior to trial. That was the day defendant was arrested and posted bail. The remaining 114 days elapsed between the time defendant was found guilty and the time he was sentenced. Defendant requests a $5-a-day credit for all 115 days he spent in custody. The State, on the other hand, argues that section 110—14, by its plain terms, is restricted to the period when an incarcerated defendant is awaiting trial. We disagree.

Neither of the cases cited by the State is helpful to its position. The courts in both *People v. Hare* (1988), 119 Ill. 2d 441, and *People v. Winkler* (1979), 77 Ill. App. 3d 35, implied that the section 110—14 credit applied only to periods of incarceration prior to trial. In both instances, however, the language constituted *dicta* and appeared to reflect an assumption regarding the credit. Neither court was asked to resolve the issue now before us. Absent authority, we turn to an examination of the statutory provision itself.

The most fundamental rule of statutory construction is to determine and give effect to the intent of the legislature, and that inquiry properly begins with the language of the statute. (*People v. Hare* (1988), 119 Ill. 2d 441, 447.) The court must examine the statutory language as a whole, considering each part in connection with every other part. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484; *People v. Cornett* (1991), 210 Ill. App. 3d 110, 114.) Criminal statutes must be strictly construed in favor of the accused. (*People v. Chandler* (1989), 129 Ill. 2d 233, 254; *People v. Christensen* (1984), 102 Ill. 2d 321, 328.) Section 110—14 neither expressly applies only to periods of incarceration occurring before trial nor expressly excludes incarceration during a trial or following a finding of guilty but before sentencing. However, viewed as a whole, the provision appears to contemplate that it will apply to any time a defendant is incarcerated during the period from pretrial up to sentencing. The statute applies to any incarcerated person "who does not supply bail" and who is fined upon conviction of a bailable offense. This language clearly indicates to us, first of all, that the credit against a fine is not meant only for pretrial incarceration since bail may be supplied at any time

during trial. Bail may be even supplied after trial, when a defendant is awaiting the imposition or the execution of the sentence, if certain conditions are met. See 725 ILCS 5/110—6.2(a) (West 1992).

Furthermore, the statute is not applicable at all until a fine is levied against a defendant—an event which does not occur until sentencing. It was logical to make sentencing the triggering event since that is the conclusion of the trial process. Even more compelling, a given defendant would still be in jail, during the time between a finding of guilty and sentencing, for the exact same reason he was in jail prior to and during trial: he could not supply bail. Thus, such a defendant would remain "incarcerated on a bailable offense" until the trial process was complete. For each day "so incarcerated," he is to be given credit.

Finally, the statute provides for the credit when a fine is levied "on conviction" of a bailable offense. "Conviction," as used here, is defined in the Criminal Code of 1961 as "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." (Ill. Rev. Stat. 1989, ch. 38, par. 2—5 (now 720 ILCS 5/2—5 (West 1992)).) At first glance, the use of the disjunctive "or" would appear to indicate that a conviction is achieved upon the entry of either a judgment of conviction or a sentence. However, the word "judgment" is defined in the Code of Criminal Procedure of 1963 as "an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court." (Ill. Rev. Stat. 1989, ch. 38, par. 102—14 (now 725 ILCS 5/102—14 (West 1992)).) In addition, it is well established that the final judgment in a criminal case where the defendant is found guilty is not entered until the imposition of the sentence. *People v. Partee* (1988), 125 Ill. 2d 24, 32; *People v. Warship* (1974), 59 Ill. 2d 125, 130; *People v. Lashmett* (1984), 126 Ill. App. 3d 340, 346.

While the popular meaning of "conviction" may relate to the determination of guilt even without a judgment being entered (*People ex rel. Grogan v. Lisinski* (1983), 113 Ill. App. 3d 276, 279), as can be seen here in both the statutory definition of "judgment" and relevant case law, the scope of a final judgment in a criminal case includes the sentence. It is reasonable to conclude that when the legislature defined "conviction" as a "judgment of conviction or sentence" it fully intended that a conviction would arise only when sentence was imposed. It follows that, when the legislature provided credit against a fine levied "on conviction," it intended that such conviction would be secured only upon sentencing.

In light of the language of section 110—14 itself and the statutory and judicial definitions applicable to the section, and construing the statute in favor of the accused, as we must (*Chandler*, 129 Ill. 2d at 254), we hold that, for purposes of the application of section 110—14, "conviction" includes the entry of sentence. Consequently, defendants are entitled to the section 110—14 credit against a fine for all the days they are incarcerated up until the sentence and a fine are imposed upon them. Defendant here was so incarcerated for 115 days. While, at $5 per day, the defendant would received a credit of $575, the statute provides that the credit shall not exceed the amount of the fine. Accordingly, defendant is entitled to a full credit against his street-value fine of $100.

Based on the reasons stated, defendant's conviction of and sentence for unlawful delivery of a controlled substance with intent to deliver is vacated. The eight-year sentence imposed for defendant's conviction of armed violence is affirmed. The remainder of the judgment of the circuit court of Winnebago County is affirmed as modified to reflect (1) one additional day of credit, for a total of 115 days' credit, against defendant's term of imprisonment; and (2) a full credit against defendant's street-value fine of $100.

Vacated in part; affirmed as modified.

GEIGER and COLWELL, JJ., concur.