# Illinois Official Reports

## Appellate Court

***People v. Williams*, 2013 IL App (2d) 120094**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JORDAN A. WILLIAMS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0094 |
| Filed | December 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's plea of guilty to unlawful possession of a controlled substance with intent to deliver and the assessment of a public defender fee, a DNA indexing fee, a pretrial bond supervision fee and a drug assessment, the public defender fee was vacated and the cause was remanded for a proper hearing on defendant's ability to pay the fee, with notice and consideration of any financial information submitted by defendant, the DNA fee was vacated on the ground that defendant had already submitted a DNA sample pursuant to a prior conviction, the pretrial bond supervision fee was vacated on the ground that defendant was never released on bond and the fee should not have been assessed, and the drug assessment should have been offset by a credit for the 345 days defendant spent in custody. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-CF-2718; the Hon. Theodore S. Potkonjak, Judge, presiding. |
| Judgment | Affirmed as modified in part and vacated in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Colleen P. Price, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Presiding Justice Burke concurred in the judgment and opinion.
Justice Jorgensen concurred in part and dissented in part, with opinion.

## OPINION

¶ 1       After defendant, Jordan A. Williams, pled guilty to unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/407(b)(1) (West 2008)), he was sentenced to 15 years' imprisonment and ordered to pay various fines and fees, including a $750 public defender fee, a $200 DNA indexing fee, a $75 pretrial bond supervision fee, and a $3,000 drug assessment. On appeal, defendant argues that each of these fees must be vacated and that the drug assessment must be offset by credit for his time spent in custody prior to sentencing. In particular, defendant argues that the public defender fee must be vacated because the trial court imposed it without any notice or inquiry into defendant's ability to pay. The State agrees; however, the State contends that the cause should be remanded for a hearing to determine defendant's ability to pay the public defender fee. For the reasons that follow, we: (1) vacate the public defender fee and remand the cause for the trial court to determine defendant's ability to pay the fee; (2) vacate the $200 DNA indexing fee; (3) vacate the $75 pretrial bond supervision fee; (4) modify the mittimus to reflect a $1,730 credit toward the drug assessment; and (5) order the trial court to reduce the debt collection fee to reflect these changes.

¶ 2                                    I. BACKGROUND

¶ 3       The facts relevant to resolving the issues raised are as follows. On July 29, 2009, defendant was charged by a three-count indictment. Count I charged armed violence (720 ILCS 5/33A-2(a) (West 2008)), count II charged unlawful possession of a controlled substance (between 1 and 15 grams of a substance containing cocaine) with the intent to deliver within 1,000 feet of a school (720 ILCS 570/407(b)(1) (West 2008)), and count III charged unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a), (e) (West 2008)).

¶ 4    Initially, a public defender was appointed to represent defendant. On November 9, 2009, defendant secured private counsel, and the public defender was allowed to withdraw. At that time, the trial court noted that the public defender's office had represented defendant through the preliminary hearing, arraignment, and pretrial stages. Accordingly, the court ordered defendant to pay $750 for the services of the public defender.

¶ 5    When the fee was ordered, the only information in the record pertaining to defendant's financial circumstances was a certificate of assets, filed when the public defender was appointed. The certificate indicated that defendant was unemployed, had three children, and had no assets. Defendant was incarcerated when the certificate was filed and remained incarcerated when the public defender fee was imposed.

¶ 6    On April 14, 2010, defendant pled guilty to count II of the indictment, a Class X felony, in return for dismissal of the other two counts. There was no sentencing agreement. On June 18, 2010, the trial court sentenced defendant to 15 years' imprisonment and assessed various fees and fines.

¶ 7    On July 16, 2010, defense counsel filed a motion to reconsider the sentence. The motion was denied at a hearing on March 14, 2011. Defendant appealed, and this court vacated the denial of his motion to reconsider and remanded the case based on counsel's failure to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). *People v. Williams*, 2011 IL App (2d) 110367-U. A new motion to reconsider was filed on January 5, 2012. The court denied the motion at a hearing that same day, and this timely appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9    Defendant raises five issues in this appeal: (1) whether the $750 public defender fee must be vacated outright or whether the cause must be remanded for a proper hearing; (2) whether the $200 DNA fee must be vacated; (3) whether the $75 pretrial bond supervision fee must be vacated; (4) whether the $3,000 drug assessment must be offset to reflect credit for defendant's time in custody prior to being sentenced; and (5) whether the debt collection fee must be recalculated.

¶ 10                               A. Public Defender Fee

¶ 11   Defendant first claims that the trial court's order imposing the public defender fee violated section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1(a) (West 2008)) and must be vacated.

¶ 12   According to section 113-3.1(a) of the Code, when a criminal defendant is represented by court-appointed counsel, a trial court may order the defendant to pay a reasonable sum to reimburse the county or the State. 725 ILCS 5/113-3.1(a) (West 2008). The Code further states:

   "In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under Section 113-3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be conducted on the court's own motion

- 3 -

or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the cause at the trial level." *Id.*

¶ 13    A trial court may not impose a public defender fee in a perfunctory manner. *People v. Somers*, 2013 IL 114054, ¶ 14. Instead, "the court must give the defendant notice that it is considering imposing the fee, and the defendant must be given an opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances." *Id.* The hearing is mandatory and is not up to the discretion of the trial court. *People v. Love*, 177 Ill. 2d 550, 555 (1997). The hearing should examine the costs of representation, the defendant's financial circumstances, and the defendant's foreseeable ability to pay. *Somers*, 2013 IL 114054, ¶ 14. Whether the trial court complied with section 113.3.1(a) in imposing the fee presents a question of law, which we review *de novo*. *People v. Gutierrez*, 2012 IL 111590, ¶ 16. Moreover, even though defendant did not raise this issue in the trial court, we will not apply the forfeiture rule where a trial court imposes the fee without following the proper procedural requirements. *People v. Carreon*, 2011 IL App (2d) 100391, ¶ 11.

¶ 14    In this case, it is undisputed that the trial court imposed the public defender fee of $750 without holding a sufficient hearing to determine defendant's financial circumstances. Thus, the State concedes that the order requiring payment must be vacated. Accordingly, we vacate the order.

¶ 15    Although the parties agree that the $750 public defender fee must be vacated, they dispute the proper remedy. The State argues that the cause must be remanded for a sufficient hearing but defendant insists that it is not permissible to remand, given that the 90-day deadline for the hearing has passed.

¶ 16    Instructive on this issue are our supreme court's decisions in *Gutierrez* and *Somers*. In *Gutierrez*, the circuit clerk, rather than the trial court, imposed a public defender fee. *Gutierrez*, 2012 IL 111590, ¶ 24. The supreme court held that the fee should have been vacated outright, without a remand, because neither the State nor the trial court was seeking the fee, and the circuit clerk lacked the authority to impose the fee on its own. *Id.*

¶ 17    In *Somers*, the trial court accepted the defendant's fully negotiated guilty plea and entered the agreed-upon sentence. *Somers*, 2013 IL 114054, ¶ 4. The trial court additionally imposed a public defender fee after asking the defendant three questions regarding his financial circumstances. *Id.* On appeal to the supreme court, the defendant argued that the fee must be vacated outright since the trial court failed to comply with section 113-3.1(a) of the Code. *Id.* ¶ 12.

¶ 18    The supreme court stated that it was clear, as the State conceded, that the trial court's few questions to the defendant about his financial circumstances did not satisfy the requirements of section 113-3.1(a). *Id.* ¶ 14. The supreme court continued:

"Just as clearly, though, the trial court did have *some sort of a hearing within the statutory time period*. The trial court inquired of defendant whether he thought he could get a job when he was released from jail, whether he planned on using his future income to pay his fines and costs, and whether there was any physical reason

why he could not work. Only after hearing defendant's answers to these questions did the court impose the fee. Thus, we agree with the State's contention that *the problem here is not that the trial court did not hold a hearing within 90 days, but that the hearing that the court did hold was insufficient to comply with the statute*." (Emphasis added.) *Id.* ¶ 15.

Therefore, the supreme court remanded the cause for a proper hearing. *Id.* ¶ 18.

¶ 19 Defendant argues that, unlike in *Somers*, here the trial court did not ask him any questions about his ability to pay. Defendant further maintains that the record does not suggest that the trial court considered his certificate of assets, which, in any event, showed that he had no assets and no employment. Therefore, defendant argues, there can be no remand for a hearing on his ability to pay, because there was no timely hearing in the first place.

¶ 20 We disagree. *Somers* requires only that the trial court hold "some sort of a hearing within the statutory time period." *Id.* ¶ 15. While the trial court in *Somers* asked the defendant a few questions related to his finances, our supreme court never stated that such questioning was required for a hearing. Rather, the supreme court stated that a hearing "clearly" took place (*id.*), implying that less would also suffice to constitute a "hearing." Black's Law Dictionary defines a "hearing" as a "judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or law, sometimes with witnesses testifying." Black's Law Dictionary 788 (9th ed. 2009); see also *People v. Johnson*, 206 Ill. 2d 348, 358 (2002) (citing same definition of "hearing"). The proceeding here, while obviously insufficient to meet the requirements of section 113-3.1(a), still met this definition of a "hearing," as it was a judicial session open to the public, held to resolve defendant's representation by the public defender. Relatedly, the trial court imposed what it deemed to be an appropriate public defender fee. Therefore, we hold that the trial court conducted "some sort of a hearing" on the issue of the public defender fee within the statutory time period. Like in *Somers*, the trial court's error was not in failing to hold a hearing within 90 days, but instead in failing to hold a sufficient hearing.

¶ 21 The dissent concludes that a hearing under section 113-3.1 requires some inquiry into a defendant's ability to pay. The dissent cites two bases for this conclusion. First, that the statute requires a hearing to determine the amount of payment and, second, that the supreme court has made clear that section 113-3.1(a) requires a hearing on the defendant's ability to pay. *Infra* ¶ 49.

¶ 22 We agree that at a proper section 113-3.1(a) hearing the court must determine the defendant's ability to pay before setting an appropriate amount of payment. Here, the trial court did consider the public defender's time and effort in representing defendant and did set a payment amount, but, because it did not consider defendant's ability to pay, the hearing was inadequate.

¶ 23 The two bases cited by the dissent outline the parameters of a sufficient section 113-3.1(a) hearing, but they do nothing to elucidate whether "some sort of a hearing" took place.

¶ 24    As stated, the trial court in this case did conduct a hearing, albeit an inadequate hearing, on the issue of the public defender fee. We thus vacate the public defender fee and remand the cause to the trial court for a proper hearing on the issue of defendant's ability to pay a public defender fee. Based on our resolution of this issue, we need not address whether section 113-3.1(a)'s 90-day time limit is mandatory or directory. See *Somers*, 2013 IL 114054, ¶ 18.

¶ 25    While we believe that our result is consistent with *Somers*, we further note that to require an inquiry into the defendant's finances as a precondition for a remand would inevitably require us to artificially parse out what constitutes an insufficient hearing that is adequate to trigger a remand, as opposed to an insufficient hearing that requires vacating the fee without a remand. For example, would one financial question be enough of an inquiry to allow for a remand? What if the trial court examines or mentions the defendant's financial affidavit but does not directly question the defendant? We believe that, for a remand, the statute and our supreme court's decisions require simply that the trial court imposed the fee in open court, with the parties present, within the 90-day time limit. Such an interpretation does not unfairly burden a defendant, because, on remand, the trial court must fully comply with section 113-3.1(a). That is, the trial court must, among other things, provide notice and consider any financial information submitted by the defendant before determining whether to impose a fee and, if so, in what amount. See 725 ILCS 5/113-3.1(a) (West 2008); *Somers*, 2013 IL 114054, ¶ 14.

¶ 26                                      B. DNA Fee

¶ 27    Next, defendant contends that we should vacate the $200 DNA indexing fee ($190 DNA testing fee and $10 DNA test clerk's fee). Fees for DNA testing and indexing are authorized by section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2008)). However, DNA fees are authorized only where a defendant is not currently registered in the DNA database of the Illinois State Police. *People v. Marshall*, 242 Ill. 2d 285, 303 (2011).

¶ 28    In this case, when the clerk imposed the DNA fee, defendant was already registered in the DNA database in connection with a 2008 Class 2 felony conviction. A record of the Illinois State Police DNA indexing laboratory verifies that when the current fee was imposed defendant had already provided a sample and paid a fee.

¶ 29    The State concedes that the imposition of a DNA fee when a defendant's DNA is already in the database exceeds the trial court's authority and is void. Accordingly, we accept the State's concession and agree that defendant's $200 DNA assessment should be vacated. See *id.* (trial court did not have the ability to order defendant to submit a sample of his DNA and pay $200 DNA analysis fee where defendant had already submitted a DNA sample pursuant to a prior conviction and had paid a corresponding analysis fee).

¶ 30                          C. Pretrial Bond Supervision Fee

¶ 31    Defendant next contends that the $75 pretrial bond supervision fee must be vacated because he was never released on bond. The State concedes error.

¶ 32 Under section 110-10(b)(14) of the Code, a trial court may order as a condition of bond that a defendant "[b]e placed under direct supervision of the Pretrial Services Agency, Probation Department or Court Services Department in a pretrial bond home supervision capacity." 725 ILCS 5/110-10(b)(14) (West 2008). Additionally, reasonable fees may be charged to a person receiving pretrial services while under the supervision of such an agency. 725 ILCS 5/110-10(b)(14.3) (West 2008).

¶ 33 Here, the trial court set defendant's bond at $250,000 and ordered, as a condition of the bond, that he be supervised by pretrial bond services and pay a $75 fee. Subsequently, the clerk imposed a $75 pretrial bond supervision fee. However, according to the record, defendant was never released on bond and therefore the fee should never have been assessed. Accordingly, we vacate it. See *People v. Dalton*, 406 Ill. App. 3d 158, 161 (2010) (the $75 fee for pretrial bond supervision should not have been assessed where defendant was never released on pretrial bond).

¶ 34                                              D. Drug Assessment

¶ 35 Next, defendant contends that the $3,000 drug assessment must be offset by a $5-per-day credit for his time spent in custody before he was sentenced. The State agrees.

¶ 36 A $3,000 drug assessment is mandatory when a person is convicted of a Class X offense under the Controlled Substances Act. 720 ILCS 570/411.2(a)(1) (West 2008). This assessment is considered a fine. *People v. Jones*, 223 Ill. 2d 569, 588 (2006). Additionally, section 110-14(a) of the Code provides that a person incarcerated on a bailable offense is entitled to a $5-per-day credit against fines for time spent in custody prior to sentencing. 725 ILCS 5/110-14(a) (West 2008). Accordingly, defendant is entitled to presentencing credit against the charge. See *Jones*, 223 Ill. 2d at 592 (holding that the defendant's drug assessment was subject to reduction by credit for presentencing incarceration).

¶ 37 Although the sentencing order credited defendant for his time in custody prior to sentencing, no monetary credit was applied to offset the fine. Additionally, while the order credited defendant for 345 days in custody, he was actually in custody for 346 days, including the day that he was taken into custody. Defendant is entitled to credit for the additional day, as a defendant held in custody for any part of a day should be given credit for that day. *People v. Smith*, 258 Ill. App. 3d 261, 267 (1994) (defendant was entitled to credit against his sentence for the day he was taken into custody).

¶ 38 Accordingly, defendant requests that the drug assessment be offset by a credit of $1,730 ($5 multiplied by 346), leaving a drug assessment fine of $1,270 ($3,000 minus $1,730). The State agrees. Therefore, we amend the mittimus to reflect defendant's $1,730 credit.

¶ 39                                              E. Debt Collection

¶ 40 Finally, defendant contends that the debt collection fee must be reallocated based on a smaller amount to be collected. The clerk imposed a fee of $1,369 payable to "Harris and Harris," a collection agent. The $1,369 amount equals 30% of all the other assessments imposed.

¶ 41    Under section 5-9-3(e) of the Unified Code of Corrections (730 ILCS 5/5-9-3(e) (West 2008)), the State's Attorney is authorized to retain attorneys and private collection agents to collect any defaults in payments of fines or fees. An additional fee of 30% of the delinquent amount may be charged to the defendant to compensate the State's Attorney for costs incurred in collecting the delinquent amount. *Id.*

¶ 42    Defendant argues that the delinquent amount must be reduced by (1) $750 for the public defender fee; (2) $200 for the DNA fee; (3) $75 for the pretrial bond supervision fee; and (4) $1,730 for the credit on the drug assessment, for a reduction totaling $2,755. Thirty percent of the amount still to be collected, $1,807 ($4,562 minus $2,755), is $542.10.

¶ 43    The State agrees that the amount of the debt collection fee must be reduced by the (1) DNA fee, (2) pretrial bond supervision fee, and (3) monetary credit on the drug assessment. However, the State argues that the public defender fee must be determined at a proper hearing on remand and thus the reduction in the debt collection fee must be deferred until the trial court determines what, if any, amount will be imposed for the public defender fee. We agree with this approach on remand.

¶ 44                                    III. CONCLUSION

¶ 45    In conclusion, we vacate the $200 DNA fee and the $75 pretrial bond supervision fee imposed by the circuit court of Lake County. We amend the mittimus to reflect a $1,730 credit toward the $3,000 drug assessment. Additionally, because the trial court timely ordered the public defender fee during a hearing but failed to comply with section 113-3.1(a), we vacate the $750 public defender fee and remand the cause for a proper hearing on the issue of defendant's ability to pay the fee. Once an appropriate public defender fee, if any, is determined, the trial court must recalculate the debt collection fee.

¶ 46    Affirmed as modified in part and vacated in part; cause remanded.

¶ 47    JUSTICE JORGENSEN, concurring in part and dissenting in part.

¶ 48    I agree with the majority's analysis regarding the drug assessment and the DNA, bond supervision, and debt collection fees, as well its position that the public defender fee was imposed without section 113-3.1(a) compliance. I respectfully dissent, however, because I disagree that a section 113-3.1(a) hearing occurred. For purposes of section 113-3.1(a), I believe that a hearing requires, at a minimum, some inquiry into a defendant's current or foreseeable ability to pay the fee. Here, when the fee was imposed, the court made no inquiry into defendant's ability to pay, the record contained only a dated certificate of assets reflecting that defendant was unemployed, and defendant was incarcerated. In these circumstances, I would hold that no hearing was held within the 90-day period and that the

fee should be vacated outright.[1] For the following reasons, I disagree with the majority's rationale for holding otherwise.

¶ 49   The majority concludes that, because the trial court imposed the public defender fee in open court, a hearing was held on *this issue*. *Supra* ¶ 20. Again, a hearing under section 113-3.1(a) requires some inquiry, however slight, into the defendant's ability to pay. We know this for two reasons. First, because the statute requires "a hearing to determine *the amount of the payment*." (Emphasis added.) 725 ILCS 5/113-3.1(a) (West 2008). Second, because our supreme court has made clear that the statute requires a hearing on the defendant's *ability to pay*: "section 113-3.1(a) plainly requires that the trial court conduct, within the specified time period, a hearing into the defendant's financial resources to determine his *ability to pay* reimbursement." (Emphasis added.) *Love*, 177 Ill. 2d at 556. The majority here supports its position–that imposing the public defender fee in open court, *at* a hearing on any issue, constitutes a "hearing" (albeit, an insufficient one) for purposes of section 113-3.1(a)–by citing the broad definition of "hearing" found in the 2009 edition of Black's Law Dictionary. *Supra* ¶ 20. However, section 113-3.1(a) was originally enacted in 1982 (see Pub. Act 82-708 (eff. July 1, 1982)), when the word "hearing" contemplated a much more formal occurrence, certainly more than simply the announcement of a decision. Specifically, when the General Assembly chose to use the word "hearing" in section 113-3.1(a), Black's Law Dictionary defined it, in part, as:

> "A [p]roceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have [a] *right to be heard*, and is much the same as a trial and may terminate in [a] final order." (Emphasis added.) Black's Law Dictionary 649 (5th ed. 1979).

Accordingly, given: (1) the statute's requirement of a hearing for the purpose of determining payment; (2) our supreme court's position that the statute requires a hearing for the purpose of determining the defendant's ability to pay; and (3) the definition of "hearing" understood when the statute was enacted, which contemplated some formality and evidence regarding the definite issue to be determined, I disagree with the majority's conclusion that, where a public defender fee is imposed in open court but without *any* inquiry into ability to pay, a hearing has in any sense been held under section 113-3.1(a). The majority's response to my critique of its position (*supra* ¶¶ 20-23) misses the point. I present the foregoing not to establish that what occurred here fell short of the required procedures (a point with which we all agree), but to elucidate that, regardless of what the court *sua sponte* considered regarding the public defender's time, the imposition of a fee in open court but without any inquiry into

---

[1]Neither the majority nor the State performs a mandatory-versus-directory analysis to determine whether, if *no hearing* was held within the 90-day period, remand is appropriate. Indeed, that question remains unanswered, as the supreme court in *Somers* expressly declined to decide whether the 90-day time-limit is mandatory or directory. *Somers*, 2013 IL 114054, ¶ 18. While I do not, in this dissenting opinion, purport to definitively answer that question either, I would hold that, because no hearing occurred here, the fee should be vacated outright.

- 9 -

ability to pay does not constitute even "some sort of a hearing" for purposes of section 113-3.1(a).

¶ 50     I also find the majority's interpretation of *Somers* strained and unpersuasive. In *Somers*, the trial court asked the defendant three questions concerning his financial status and foreseeable ability to pay the public defender fee. The majority concludes that, because the *Somers* court found that " 'some sort of a hearing,' " albeit an insufficient one, " 'clearly' " took place in those circumstances, "less would also suffice to constitute a 'hearing.' " *Supra* ¶ 20. However, what we are considering here is not simply less, it is *nothing*. There was absolutely *no* inquiry made into defendant's ability to pay, *no* current information provided regarding defendant's ability to pay, and *no* confirmation that the dated financial information even remained accurate.

¶ 51     Most critically, the *Somers* court, consistent with the statute and the above-quoted portion of its decision in *Love*, concluded that "some sort of a hearing" occurred only after considering the questions the trial court had asked of the defendant. *Somers*, 2013 IL 114054, ¶ 15. Thus, where the *Somers* court looked to see if "some sort of a hearing" was held, it did not mean any hearing on any issue. Rather, it looked to see whether the fee was imposed at a hearing that included some inquiry into the defendant's ability to pay. According to the majority's analysis here, however, the *Somers* court performed a needless exercise. Specifically, based upon the majority's decision, the *Somers* court could have simply remanded on the bases that the public defender fee was imposed by a trial court (not a clerk, as in *Gutierrez*), within 90 days, and in open court.[2] The fact that it did not do so and, instead, considered what occurred at the hearing, reflects that even an insufficient hearing under section 113-3.1(a) requires more than the mere imposition of the fee in open court. Rather, it involves some sort of inquiry, however slight, into the defendant's ability to pay.

¶ 52     The majority's position is also illogical. Again, it holds that a hearing requires only that the "trial court imposed the fee in open court, with the parties present." *Supra* ¶ 25. This suggests that it would hold differently if, for example, the court imposed the fee by signing an order in chambers, or by passing an order to the clerk to hand to the defendant at the end of a court call. The distinction, however, in circumstances such as these, is utterly meaningless. There is no logical purpose for the parties to be present or the judge to impose the fee in open court if a "hearing" on the issue includes the *sua sponte* imposition of the fee without any notice, input, or inquiry into ability to pay.

---

[2]For similar reasons, the majority's reliance on *Gutierrez* is misplaced. The court in *Gutierrez* vacated a public defender fee because the circuit *clerk* lacked the authority to impose it. *Gutierrez*, 2012 IL 111590, ¶ 24. That does not speak to the question here, which concerns the circumstances under which a *trial court's* timely imposition of a public defender fee may be vacated outright. Indeed, *Somers* specifically contemplates occasions where a "*trial court's* error" will be the failure to hold any type of hearing within the 90 days. (Emphasis added.) *Somers*, 2013 IL 114054, ¶ 17. Again, if *Somers* intended to hold that a remand is required as long as the fee is not imposed by a clerk, and as long as it is imposed in open court within the 90-day period, it could have skipped all discussion regarding the sufficiency of the hearing and simply ordered a remand. No discussion regarding the number of questions and their content was necessary.

¶ 53        In the end, the majority essentially justifies its decision as cleaner or more workable than the alternative. It notes that its position will not require reviewing courts to parse out what constitutes an insufficient hearing that is adequate to trigger a remand, and it lists some hypothetical scenarios allegedly demonstrating how difficult that exercise might be. *Supra* ¶ 25. Respectfully, not only did the *Somers* court not take this cleaner approach (and again, it easily could have), but the majority's concerns are both irrelevant and overblown. It is not our job to avoid parsing out difficult case-specific inquiries. In fact, that is exactly what we do most of the time.

¶ 54        Finally, the majority asserts that its decision does not unfairly burden defendant because, on remand, the trial court must fully comply with section 113-3.1(a). I disagree. This assertion ignores the fact that defendant is burdened because the State is getting a second bite at the apple. Defendant is burdened because, if the 90-day period is mandatory, then the failure to hold any sort of hearing therein means that the fee would be vacated entirely, with no opportunity to strike again. Defendant is burdened by virtue of having to defend against the fee, and, in theory, he could even be ordered to pay more than the original, improperly imposed fee. This prejudice is particularly apparent if, due to our remand for a hearing, the public defender is appointed to represent defendant at the hearing and those additional costs are attributed to defendant.

¶ 55        In this vein, I also note that the suggestion that there is no undue burden generally ignores the simple economic realities involved in a remand, which might include additional costs to transport defendant from the Department of Corrections to a hearing, as well as, again, those incurred in appointing counsel, which, assuming that defendant cannot pay, will be borne by taxpayers. To be clear, those costs might be justified if the original hearing was simply insufficient. However, here, where it is my opinion that the majority is finding a hearing where there was none, I do not think that those costs should be ignored as trivial.

¶ 56        In conclusion, I dissent from the majority's decision that a hearing under section 113-3.1(a) was held within the 90-day period. As the statute plainly requires a hearing within the 90-day period, and no such hearing occurred here, I would vacate the fee but not remand.